**I. C. ETHRIDGE, et al., Plaintiffs,**

v.

**MASONRY CONTRACTORS, INC., Defendant.**

**Civ. A. No. C78–1724A.**

United States District Court, N. D. Georgia, Atlanta Division.

March 25, 1982.

---

**17.** Paper No. 11, at ¶¶ 17 and 20.

**18.** Paper No. 11, at ¶ 23.

Robert H. McKnight, Jr., Harman, Asbill, Roach & Nellis, Atlanta, Ga., for plaintiffs.

J. Timothy White, Cotton, Katz, White & Palmer, Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

Plaintiffs, employee benefit plans (hereinafter "funds")[1] and their trustees, brought this action pursuant to 29 U.S.C. § 1132(a)(3), seeking to audit defendant's payroll records, a contributor to the funds, and an accounting of all funds due to the funds. Plaintiffs also seek attorney's fees, the cost of the audit and interest if defendant's contributions to the funds are found to be insufficient. After lengthy pretrial proceedings the case was tried by the Court without a jury on February 2 and 3, 1982. The findings of fact and conclusions of law that follow are made pursuant to Rule 52, Fed.R.Civ.P.

### FINDINGS OF FACT

1. Wade E. Stevenson, CPA, P.C., acting on behalf of plaintiffs, conducted an audit during 1980 of defendant's payroll records. This audit examined defendant's contributions to the funds for the period of August 9, 1976 through March 31, 1980.

2. The audit was restricted to defendant's records for work done within the territorial jurisdiction of Bricklayers' Local Union No. 8.

3. The Court finds, as reported by the auditor, Mr. Thomas Dooley, that there was a net underpayment to the funds of $4,078.26. This underpayment breaks down as follows:

| | |
|---|---|
| Pension Fund | $ 942.40 |
| Health & Welfare Fund | $1,377.93 |
| Vacation Fund | $1,757.93 |
| Total | $4,078.26 |

4. The auditor also found $64,268.68 in payments by defendant to the funds which he could not verify. These consisted of the following contributions:

---

1. These funds are the Bricklayers' Local Union No. 8 (1) Health and Welfare Fund, (2) Pension Fund, and (3) Vacation Fund. These funds are operated by boards of trustees composed of representatives of participating contractors, such as defendant, and representatives of the said union.

| | |
|---|---|
| Pension Fund | $20,224.55 |
| Health & Welfare Fund | $21,776.10 |
| Vacation Fund | $22,268.03 |
| | $64,268.68 |

5. On December 30, 1980, Mr. Dooley discussed the result of the audit with Mr. William Amason, an officer of defendant.

6. The auditor reported his findings to plaintiffs' funds on February 3, 1981.

7. On May 8, 1981, plaintiffs' counsel mailed a copy of the auditor's written report to defendant's counsel.

8. On July 10, 1981, defendant demanded from plaintiffs a refund of the unverified contributions; plaintiffs rejected defendant's demand on July 23, 1981.

9. The Court finds that the unverified payments of $64,268.68 were made by defendant to the funds by a mistake of fact. Mr. Amason testified that defendant calculated its contributions to these funds for the period in question through the use of a computer. According to Mr. Amason, the computer calculated defendant's contributions for its employees and these were paid regardless of whether they had worked within the jurisdiction of Local No. 8. He further testified that defendant could not always tell which workers belonged to the union. Mr. Amason explained that the overpayments were not detected because the total of $64,268.68 represents small amounts paid on any given month, over a three year period, compared to defendant's payroll. The Court finds this explanation more credible than plaintiffs' contention that these overpayments were made pursuant to an oral agreement between defendant and its employees who worked on jobs outside the jurisdiction of Local No. 8. The Court also discounts plaintiff's alternative argument that the overpayments cannot be verified because of missing payroll records of defendant for in-jurisdiction jobs.

10. Plaintiffs contend that certain manual changes made by defendant's employees to defendant's computer produced monthly reports of its contributions to the funds show that defendant was aware of the said overpayments at the time the overpayments were made. The Court finds that any such changes do not establish defendant's knowledge of the overpayments.

11. Although Mr. Amason discussed some aspects of the audit with Mr. Dooley on December 30, 1980, the Court finds that defendant was not fully aware of the nature and size of the overpayments until the middle of May of 1981. At that time, defendant received a copy of the auditor's report from plaintiffs' counsel.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e).

On January 28, 1982 the Court denied defendant's motion for leave of Court to amend its answer to assert a counterclaim against plaintiffs for the $64,268.68 overpayment. The Court held, inter alia, that defendant's motion was *inexcusably* untimely. On February 4, 1982, in another order, the Court ruled that defendant was entitled to introduce evidence concerning the unverified overpayments to plaintiffs to seek a set-off or recoupment against plaintiffs' recovery, if any.

### I. *Return of the Overpayments*

Section 1103(c)(2)(A) of Title 29 of the U.S.C. provided at the time this action was filed that

[i]n the case of a contribution which is made by an employer by a mistake of fact, paragraph (1) [2] shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution.

On September 26, 1980, section 1103(c)(2)(A) was amended and it now reads, inter alia, as follows:

In the case of a contribution...

---

2. Paragraph (1) provides, inter alia, that the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

(ii) made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

The effective date of the 1980 amendment to section 1103(c)(2)(A) is set out in section 410(c) of the said amendment. Pub.L. 96–364, Title IV, § 410(c), 94 Stat. 1308. Section 410(c) is set out as a note under section 401 of Title 26 of the U.S.C. and it states that

[t]he amendment made by this section shall take effect on January 1, 1975, except that in the case of contributions received by a collectively bargained plan maintained by more than one employer before the date of enactment of this Act [September 26, 1980], any determination by the plan administrator that any such contribution was made by mistake of fact or law before such date [September 26, 1980] shall be deemed to have been made on such date of enactment.

In the case at bar, the auditor found the underpayment and overpayment of contributions for the period of August 9, 1976 through March 31, 1980. As already noted, upon discovery of the overpayments, defendant promptly requested plaintiffs to return said overpayments. However, the plan administrator never determined that the overpayments were made by a mistake of fact or law. To the contrary, the plan administrator refused to return any of these overpayments. Accordingly, the Court must decide whether the 1980 amendment to section 1103(c)(2)(A) is applicable absent a determination from the plan administrator that the overpayments were made by either a mistake of fact or law.

■ The Court finds that the 1980 amendment to section 1103(c)(2)(A) applies retroactively to this action. First, the 1980 amendment is effective on January 1, 1975 except where a determination by the plan administrator was made before September 26, 1980. Second, absent a determination, such as here, it is clear that the 1980 amendment is effective as of January 1, 1975. Therefore, given that the time period under question is between August of 1976 and March of 1980, the 1980 amendment is applicable to this action.

■ The above finding makes it necessary to ascertain whether the amended section 1103(c)(2)(A) permits return of any overpayments to defendant absent a determination by the plan administrator that the contribution was made by mistake of law or fact. The Court finds that an employer is entitled to the return of an overpayment where, within six months of its discovery, it demands the return of the overpayment. If section 1103(c)(2)(A) required the said finding by the plan administrator as a prerequisite to the return of overpayments many employers would be without legal recourse. A plan administrator would be at liberty to either (1) never make the appropriate determination or (2) determine that no "contribution was made by such mistake." 29 U.S.C. 1103(c)(2)(A). The Court finds this outcome contrary to the intent of Congress. Pub.L. 96–364 § 3, 94 Stat. 1209–10.

Here, defendant demanded the return of the unverified overpayments to plaintiffs within six months of the date that it received notice of the overpayments. Thus, section 1103(c)(2)(A) does not bar defendant from recovering the said overpayments. However, as already decided by the Court, defendant is only entitled to use the amount of the overpayments as a set-off against the underpayment found by the auditor.

## II. Attorney's Fees and Costs

Plaintiffs seek attorney's fees for the prosecution of this action. Defendant argues, pursuant to *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255 (5th Cir. 1980), that plaintiffs are not entitled to attorney's fees.

Section 1132(g) of Title 29 provided, prior to the 1980 amendments, that in an action such as this, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The new section 1132(g) reads as follows:

(1) In an action under this subchapter (other than an action described in paragraph (2)) . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

(2) In an action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan—

. . . . .

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant . . .

(Emphasis added.) Some courts have disagreed as to the retroactive effect of the 1980 amendment to section 1132(g). *See e.g. Hammond v. James W. Griffin Co., Inc.,* 520 F.Supp. 162, 169 (N.D.Ga.1981) (applied the preamendment section 1132(g) to a case decided after the effective date of the amendment, but which was pending prior to the amendment); *Central States, Southeast & Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919, 933 (E.D. Mich.1981) (holding that the 1980 amendment to section 1132(g) applies retroactively to suits pending on its effective date).

[3] In this case it is immaterial which of the two versions of section 1132(g) applies. After all, plaintiffs brought this action pursuant to 29 U.S.C. § 1132(a)(3) and never amended their complaint to include a claim pursuant to 29 U.S.C. § 1145 [3]; this latter section was added to Title 29 by the 1980 amendment. Therefore, if the new version of section 1132(g) is applied here, subsection (g)(1) would be the applicable subsection and that subsection is substantively the same as the old version of 1132(g). Accordingly, the Court holds that the test laid down by the court in *Bowen* is controlling regardless of which version of section 1132(g) is applicable in this action.

In *Bowen* the court set the following factors to determine whether an award of attorney's fees under 29 U.S.C. § 1132(g) is appropriate.

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.

(Citations omitted.) 624 F.2d at 1266. The court added that

[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g) [29 U.S.C. § 1132(g)].

*Id.*

In the case at hand, in order to properly address the issue of attorney's fees, it is necessary to review the events which led to the audit performed by plaintiffs' accountant. The agreements and declarations of trust of the funds, to which defendant is a party as a member of the Masonry Contractors Association of Atlanta, provide that the trustees of the funds may inspect and audit an employer's payroll records to determine whether proper contributions have been made to the funds. Early in this litigation, plaintiffs, the trustees of the funds, authorized an audit of defendant's payroll records. Defendant refused to permit the audit, arguing that it was not bound by the collective bargaining agreement entered into by the Masonry Contractors Association and the union on behalf of their respective members. Defendant also contended that it was not bound by the agreements and declarations of trust of the funds.

---

**3.** 29 U.S.C. § 1145 provides as follows:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Thus, plaintiffs had no alternative but to seek an order of this Court compelling defendant to permit such an audit. On March 26, 1980, the Court partially granted plaintiffs' motion for summary judgment and found that as a matter of law defendant was bound by the above mentioned agreements. *Citing, Local No. 415, International Ladies' Garment Workers' Union AFL–CIO v. Miami Casuals, Inc.*, 79 LRRM 2732 (S.D. Fla.1971), *aff'd per curiam*, 456 F.2d 799 (5th Cir. 1972); *Lewis v. Owens*, 338 F.2d 740 (6th Cir. 1964); *Lewis v. Coleman*, 257 F.Supp. 38 (S.D.W.Va.1966). Pursuant to the above ruling plaintiffs proceeded to have their accountants conduct the audit of defendant's records which showed the said underpayment and the "unverified contributions".

Against this background the Court finds that plaintiffs should be awarded reasonable attorney's fees for bringing this action and obtaining this Court's order requiring the audit, the costs of conducting said audit, and the costs of this action up to the time of this Court's order of March 26, 1980. This finding is based on the following analysis of the relevant factors set out in *Bowen*.

1. *Culpability or Bad Faith* The Court finds that defendant did not act in bad faith. However, in the Court's view, defendant did not have a reasonable legal ground to oppose plaintiffs' request to audit its payroll records. The Court found defendant's argument that it had not ratified the various agreements to be without merit. Order of March 26, 1980 at p. 3. Defendant's groundless resistance to the performance of the audit caused plaintiffs substantial expense in attorney's fees for which they should be compensated.

2. *Ability to Satisfy an Award of Attorney's Fees* Defendant has stressed that it is not a "Fortune 500 company". The Court has not examined defendant's financial statements. However, the testimony at the trial revealed that defendant during the years of 1976 through 1980 had a substantial yearly payroll. As a result, the Court finds that although defendant is not a large

enterprise it is able to satisfy an award of attorney's fees in this action.

3. *Whether Attorney's Fees Against Defendant Will Deter other Persons Acting Under Similar Circumstances* It is clear that an award of attorney's fees in this action will deter other employers participating in multiemployer pension funds from resisting an audit which is authorized by the funds' agreements and declarations of trust.

4. *Whether Plaintiffs Sought to Benefit All Participants and Beneficiaries of an ERISA Plan or to Resolve a Significant Legal Question Regarding ERISA Itself* The Court finds that plaintiffs sought to benefit all participants and beneficiaries of these funds. Their request to audit defendant's payroll records is part of plaintiffs' duties as trustees of these funds. Plaintiffs' performance of their duty to oversee the funds' operation undoubtedly benefits all participants and beneficiaries of the funds.

5. *Relative Merits of the Parties' Positions* As already discussed above, the Court finds that defendant's refusal to allow plaintiffs to audit its records was without merit.

After carefully weighing all these factors, the Court concludes that plaintiffs are entitled to an award of attorney's fees against defendant for having to commence this action and to move for an order of the Court holding that plaintiffs had the right to perform the said audit.

Additionally, plaintiffs seek recovery from defendant of the cost of performing the audit and of bringing this action. The agreements and declarations of trust of plaintiffs' pension fund and the health and welfare fund specifically authorize the trustees to charge the employer all or a portion of the expense of the audit in case an underpayment is found to exist. Furthermore, section 1132(g) as it existed prior to the 1980 amendment as well as the present section 1132(g)(1) give this Court discretion to allow costs in addition to attorney's fees. Based on the analysis of the *Bowen* factors discussed above, the Court finds that plain-

tiffs are entitled to the cost of the audit and the costs of prosecuting this action which were necessary to obtain this Court's order requiring defendant to allow the audit of its payroll records.

Therefore, plaintiffs are ORDERED to submit an itemized application for attorney's fees, the cost of the audit and other costs, supported by proper affidavits, within fifteen (15) days of the date of this order. This application shall cover the period from the commencement of this action until the Court's order of March 26, 1980. Defendant shall have twenty-five (25) days to file a responsive brief.

## CONCLUSION

For the reasons set forth above, the Clerk is DIRECTED to enter judgment for defendant. The Court will determine the amount of plaintiffs' award of attorney's fees and costs after the parties have filed their respective memoranda. The Clerk is DIRECTED to resubmit this case to the Court thirty days from the date of this order.