Ivy A. THOMPSON

v.

ASBESTOS WORKERS LOCAL NO. 53 PENSION FUND, et al.

Civ. A. No. 79–59–B.

United States District Court, M.D. Louisiana.

Jan. 7, 1983.

Clinton Hyatt, Jr., Baton Rouge, La., for plaintiff.

Louis L. Robein, Jr., Michael J. Molony, Jr., New Orleans, La., Paul Marks, Jr., Thomas E. Balhoff, Baton Rouge, La., for defendants.

POLOZOLA, District Judge:

Ivy A. Thompson filed this suit against the Heat, Frost, and Asbestos Workers Union, Local 53 (the Union), the Asbestos Workers Local 53 Pension Fund (the Fund), and the Fund's trustees. The plaintiff claims retirement benefits under the Fund's pension plan (the plan), or, in the alternative, the right to have his present employer contribute to the Fund so that he can receive additional retirement credits.

An application for benefits was filed by the plaintiff on March 11, 1975, and finally denied by the trustees on September 22, 1975. The plaintiff contends this denial violates the provisions of the Employee Retirement Income Security Act of 1974 (ERISA).

The Court finds that because the plaintiff is engaged in the "same trade or craft" as that term is defined in 29 U.S.C. § 1053(a)(3)(B), plaintiff is not entitled to retirement benefits under the Fund's pension plan, nor is plaintiff entitled to have his present employer contribute to the Fund. Thus, plaintiff's suit must be dismissed.

Ivy A. Thompson began working in the insulation trade in 1948 as a member of the Union. Union workers are hired by the job by various insulating contractors in the area. The plaintiff worked almost continuously for the Union from 1948 to 1974, during which he worked his way up the Union ladder. For approximately the last 20 years of his Union employment, plaintiff was usually hired as a general foreman, the highest Union position. For short periods during the late 1960's and early 1970's, the plaintiff was hired as a field superintendent for various insulating contractors. Because a field superintendent is considered a man-

agement position, Thompson withdrew from the Union during those periods he worked as a field superintendent.

In August of 1974, the McCarty Corporation (McCarty), the insulating contractor which had been the plaintiff's most frequent employer over the years, offered the plaintiff a permanent position as a field superintendent. The plaintiff accepted McCarty's offer and went to work with McCarty as a field superintendent and has continued to work for McCarty until the present time.

As a general foreman, Mr. Thompson directly supervised the workers on a job. He organized work and materials on one job at a time and occasionally would physically apply the insulation. As a field superintendent, the plaintiff supervises several jobs at one time. Many of his responsibilities as a field superintendent are similar to those of a general foreman, although the plaintiff is prohibited by Union rules from any direct contact with the insulation work. His supervision on a job is through the general foreman. Unlike a general foreman, the field superintendent must travel from job to job and file written reports with McCarty. Approximately ninety to ninety-five percent of McCarty's work is performed by insulation workers, but the field superintendent is also responsible for any other workers who happen to be on a job.

The Union adopted the pension plan in 1959. The plan is funded by employer contributions made on behalf of Union members. McCarty has been a contributing employer since the plan's inception.

In January of 1975, the plan administrator notified Mr. Thompson that McCarty could no longer contribute to the plan on plaintiff's behalf since the plaintiff was no longer a union member. Plaintiff was also notified that he would no longer receive retirement credit under the plan. The plan refunded McCarty for contributions it had made to the plan from August, 1974, to January, 1975, on behalf of the plaintiff.

On March 11, 1975, plaintiff reached the minimum age and service requirements for retirement under the plan and applied for

pension benefits. These benefits were denied based on paragraph 2.10 of the plan as interpreted and applied by the trustees. Paragraph 2.10 read in part as follows:

2.10 Retirement under this Plan shall be voluntary. "Retirement" means complete withdrawal by an Employee from any of the following:

(a) Employment with any contributing Employer; or

(b) Employment with any person the same or related business as any contributing Employer; or

(c) Self-employment in the same or related business as any contributing Employer; or

(d) Employment by any person in work of a type covered by the Craft Agreement.

There shall be no limit to the geographical area covered.

It is clear that a provision such as ¶ 2.10 has many purposes. First, it avoids the potential discontent that might result if a former Union general foreman is promoted above his former co-workers and performs many of the same functions on a broader scale, but is also allowed to draw retirement benefits in addition to his increased salary. Second, it encourages the older workers at the top to retire to make room for the advancement of younger workers. Finally, it encourages the complete and early retirement of workers from the asbestos industry and its serious health hazards.

Paragraph 2.10 has been consistently applied by the trustees. The plaintiff has offered no evidence that anyone has been permitted to receive benefits from the plan while working as a field superintendent for a contributing employer.

Finally, the plan is administered solely by the trustees and is not controlled by the Union.

 The plaintiff has joined the Union as a defendant in this case. In general, pension funds are treated as separate entities from the employers or unions which create them. Since the plaintiff has not shown that the Union, rather than the trustees, in fact controls the Fund, the Union is

not a proper party defendant to this action. *Boyer v. J.A. Majors Co. Employees Profit Sharing Plan,* 481 F.Supp. 454 (N.D.Ga. 1979); *Barrett v. Thorofare Markets,* 452 F.Supp. 880 (W.D.Pa.1978); *Carter v. Montgomery Ward and Company,* 76 F.R.D. 565 (E.D.Tenn.1977). Thus, the Union must be dismissed as a party defendant in this action.

 The plaintiff contends that the Fund's denial of benefits to him violates ERISA. ERISA is applicable to this case because the unauthorized suspension of benefits is viewed as a continuing violation of the Act. *Riley v. MEBA Pension Trust,* 570 F.2d 406 (2nd Cir.1977); *Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650 (9th Cir. 1981).

Plaintiff claims that the defendants have violated § 203 of the Act, 29 U.S.C. § 1053. In general, § 1053 requires that vested benefits be non-forfeitable. However, § 1053(a)(3)(B) provides an exception to this requirement:

(B) A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits—

(i) in the case of a plan other than a multiemployer plan, by an employer who maintains the plan under which such benefits were being paid; and

(ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.

The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term "employed".

The plaintiff argues that ¶ 2.10 of the plan could be read to apply in situations not permitted by § 1053(a)(3)(B)(ii), for example, where an employee, otherwise eligible for retirement benefits, is employed by a contributing employer in an occupation to-

tally unrelated to the trade or craft covered by the plan or is employed in a different geographic area. Plaintiff relies on *Thomson v. IAM National Pension Fund,* 616 F.2d 343 (7th Cir.1980) to support his position. In *Thomson,* however, the plaintiff was asked to sign a "Retirement Declaration" before receiving benefits. This declaration contained language similar to that found in ¶ 2.10 of the plan. A retiree signing the declaration promised not to engage in any of the activities found there. Thomson sought a declaratory judgment that he could not be prohibited from engaging in those activities.

Thompson's claim stands before this Court in a different posture than that of the plaintiff in the *Thomson* case. Thompson is not asking the Court for a declaration of what activity is lawfully restrained. Thompson claims only that his benefits have been illegally denied. Such a contention will be true only if plaintiff's current job does not fit within the exception of § 1053(a)(3)(B)(ii).

■ The trustees of an ERISA plan have a great deal of power to interpret the plan. *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97 (5th Cir.1979); *Riley v. MEBA Pension Trust,* supra; *Smith v. CMTA–IAM Pension Trust,* supra. The trustees' interpretation will not be upset by the Court unless it is found to be arbitrary or capricious. If the trustees have consistently interpreted the plan in compliance with ERISA, no violation has taken place, regardless of how the plan *could* be interpreted. A review of the record fails to show that the action of the trustees was arbitrary or capricious.

There is no real dispute that Thompson is employed in the same industry and in the same geographic area as that covered by the plan. Thus, this case turns on the application of the term "same trade or craft" to the facts found by the Court.

■ While the trustees are free to interpret the plan, the interpretation of § 1053(a)(3)(B) is for the Court to determine. A recent regulation promulgated by the Secretary of Labor provides some guidance for the Court in determining the meaning of § 1053(a)(3)(B). In 29 C.F.R. § 2530.203–3(c)(2)(ii)(C), the Secretary defines a trade or craft to include "supervisory activities relating to a skill or skills" otherwise defined as a trade or craft in the paragraph. The Court agrees with the definition of trade or craft as defined by the Secretary in the above regulation.

Section 1053(a)(3)(B) is generally intended to allow an employer to avoid paying retirement benefits to an employee through a pension plan while, at the same time, it is paying the employee a salary. See Legislative History: U.S. Code, Congressional, and Administrative News, 1974, pp. 4639, 4724. Viewed in this light, "trade or craft" must mean more than the physical practice of a trade. "Trade or craft" must also include the supervision of others who are working in the trade.

■ A majority of the plaintiff's present work involves the supervision of insulation workers and contracting. Thus, the Court finds as a matter of law under the facts of this case that the plaintiff is engaged in the same trade or craft in the same industry and in the same geographic area as that covered by the plan. Therefore, § 2.10 of the plan, as applied by the trustees, does not violate ERISA. The plaintiff's benefits have been lawfully suspended.

Since the Court finds that the plaintiff is not entitled to benefits under the plan, the Court is not required to decide when the plan began to be governed by ERISA. Regardless of the effective date of ERISA, it is clear that the maximum benefits recoverable under the facts of this case are those withheld after January 10, 1976. ERISA carries a three-year statute of limitations, 29 U.S.C. § 1113, and this suit was not filed until January 10, 1979.

■ The Court also finds as a matter of law that Thompson is not entitled to receive retirement credits for work performed at his present job. Since the plaintiff is no longer a member of the Union, he cannot participate in its plan. It must be noted that Thompson does participate in a retirement plan that McCarty provides for its non-union employees.

Therefore, for the reasons set forth above, judgment shall be rendered in favor of the defendants, Heat, Frost, and Asbestos Workers, Local 53, Asbestos Workers Pension Fund, and its trustees, and against the plaintiff, Ivy A. Thompson, dismissing plaintiff's suit with prejudice at plaintiff's cost.

Judgment shall be entered accordingly.