**Ivy A. THOMPSON, Plaintiff-Appellant,**

v.

**ASBESTOS WORKERS LOCAL NO. 53 PENSION FUND, Et Al.,**
**Defendants-Appellees.**

**No. 83–3077**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1983.

Clinton Hyatt, Jr., Baton Rouge, La., for plaintiff-appellant.

Dodd, Barker, Boudreaux, Lamy & Gardner, Louis L. Robein, Jr., New Orleans, La., for all defendants-appellees.

Michael J. Molony, Jr., New Orleans, La., Tho. E. Balhoff, Baton Rouge, La., for Branton, Gabler, Taylor and Sprague et al.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant Ivy A. Thompson brought suit against the Heat, Frost & Asbestos Workers Union, Local No. 53 (the Union) and its Pension Fund (the Fund), claiming retirement benefits. In the alternative, he urges the right to have his present employer contribute to the Fund so that he can receive additional retirement credits. The trustees of the Fund have suspended pension benefits to him. Under their interpretation of the provisions of the Fund he is barred from being paid retirement benefits because he is not retired but is employed in a supervisory capacity in the insulating business. The district court, 554 F.Supp. 296, entered judgment in favor of the Union and the Fund and its trustees. In this appeal, oral argument has been waived by the parties.

This case raises an issue concerning which there appears to be no precise controlling authority. It is whether an employee who is otherwise eligible for retirement benefits may have the payment of those benefits suspended because the employee has moved into a supervisory management position in the industry and is working fulltime in such a position. The issue involves an interpretation of the pension fund agreement under which Thompson claims benefits. It also raises an issue under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.

Thompson worked in the insulation trade as a member of the Union from 1948 to 1974. There were short periods when he left the Union to work as field superintendent and then went back to the position which he occupied during the last twenty years of his employment, that of general foreman. In August 1974, the McCarty Corporation hired the plaintiff in the permanent position as a field superintendent. McCarty is an insulating contractor so Thompson continued in the same business or industry which had occupied him as a journeyman or craftsman. Because he became a supervisor, he left the Union. Under the collective bargaining agreement of the McCarty Corp., in his supervisory position he is forbidden to engage in "production".

The pension plan under which Thompson claims retirement benefits was adopted by the Union in 1959. Thompson's present employer, McCarty, has been a contributing employer since the inception of the plan. In January 1975, the administrator of the plan notified appellant and McCarty that the company could no longer contribute to the plan on the plaintiff's behalf since the plaintiff was no longer a Union member. Plaintiff also was notified that he would no longer receive retirement credits under the plan. Two months later, Thompson reached the minimum age and service requirements for retirement under the plan. He applied for pension benefits. The trustees of the plan, following their consistent interpretation, suspended the payment of pension benefits under ¶ 2.10 of the plan. That provision reads in part as follows:

2.10 Retirement under this Plan shall be voluntary. "Retirement" means complete withdrawal by an Employee from any of the following:

(a) Employment with any contributing Employer; or

(b) Employment with any person the same or related business as any contributing Employer; or

(c) Self-employment in the same or related business as any contributing Employer; or

(d) Employment by any person in work of a type covered by the Craft Agreement.

There shall be no limit to the geographical area covered.

Under this provision Thompson obviously is employed in the same or related business and also employed with a contributing employer. In turn this means that he cannot be "retired" under the terms of the plan.

■ Thompson takes the position that applying the pension plan agreement in his situation to suspend payment of retirement benefits to him is a violation of the provision of ERISA vesting pension benefits and prohibiting their forfeiture. Of particular relevance, both parties agree, is the provision of the statute creating an exception to forfeiture by allowing suspension of benefits when the person claiming retirement benefits is employed under the provisions of 29 U.S.C. § 1053(a)(3)(B) which reads as follows:

§ 1053. Minimum vesting standards.

(a) Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.

.      .      .      .      .

(3)(B) A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits—

(i) in the case of a plan other than a multiemployer plan, by an employer who maintains the plan under which such benefits were being paid; and

(ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.

The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term "employed".

The plan under which Thompson claims is a "multiemployer plan", so subparagraph (ii) is applicable. There is no problem as to industry and geographic area. Thompson's basic contention is that he is no longer employed in the same trade or craft as he was when he was a journeyman insulator and foreman because he is now a supervisor and, therefore, is not working in a trade or craft. Thompson supports this contention by concluding that he is not an "employee" within the meaning of the provision quoted above. The argument is that both under ERISA and under the Asbestos Workers' Trust Agreement, a person who is employed is by definition an employee only if he or she is covered by a collective bargaining agreement.

Thompson's contention is extreme. It would require strong and unambiguous language in the statute to support it. The contention, stated starkly, is that under ERISA it is *impossible* for any pension plan to provide for the suspension of benefits to a person otherwise eligible for them, even though they are employed fulltime as a "management" employee. This would be so whether the position is that of superintendent, executive, or even president of the company.

Under this contention ERISA would require and force all employer contribution pension plans to pay retirement benefits to employees who had moved up into responsible management positions where typically, as in Thompson's case, retirement credits in a generous management retirement plan are being built up, and the employee claiming the retirement benefits is engaged fulltime in highly paid employment. We cannot read ERISA to compel such a result. ERISA was designed to protect working people in their retirement pension rights. Thompson's retirement credits are protected. His retirement payments are in suspension only until he actually retires. ERISA has as a major purpose a guarantee that employees can retire and obtain retirement benefits from pension funds. There is no indication this guarantee was for the pay-

ment of retirement benefits to a retiree working in a management capacity in the same industry and who is associated with the same craft in the same area and working for a contributing employer.

At the time this case arose, the Secretary of Labor had not prescribed the regulations provided for in § 1053(a)(3)(B). He did prescribe such regulations in 1981. In those regulations he defines a trade or craft to include "supervisory activities relating to a skill or skills" otherwise defined as a trade or craft in the paragraph. 29 C.F.R. § 2530.203–3(c)(2)(ii)(C). This regulation specifically provides that it is not retroactive. It is, therefore, not controlling in this case. Instead, we apply the statutory provision itself.

We see the regulation of the Secretary, however, as strongly confirming the practical and sensible interpretation of the statutory provision. Thompson, as a supervisor with McCarty, is employed "in the same trade or craft" as that covered by the plan. As we point out above, to interpret this provision otherwise would mean that every eligible employee promoted to a management position within the same industry and trade and craft could retire and receive retirement benefits while working at high pay in the same industry or craft as a superintendent. There is nothing in the caselaw nor in the legislative history of ERISA which would indicate that such a rigorous interpretation should be applied.

The scant legislative history bears out our conclusion. House Report No. 93–807 on ERISA makes specific reference to this provision. It says simply that in the case of a multiemployer plan, "the benefits may be suspended if the employee has resumed employment in the same industry even though not with the same employer." 3 U.S.Code Congressional & Admin. News, 93rd Congress, 2nd Session, 1974, p. 4724. Note that this quotation does not place emphasis upon "trade or craft" being a restrictive limitation upon the kind of work being carried out. The emphasis is upon the industry. The trade or craft classification is obviously oriented at someone who moves into some other kind of employment within the industry such as advertising, secretarial work, security, or janitorial work, and the like. Other references in the House and Senate reports do no more than repeat the actual words of the statute so they cannot fairly be said to be interpretative.

Brief mention should be made of appellant's alternative contention that his employer should still be allowed to contribute to the Fund to continue to build up his pension benefits. Such an interpretation is contrary to the wording of the Fund's provisions and the sense and meaning of ERISA. Nothing in ERISA compels the extension of such funds to employees other than those in the collective bargaining relationship. Thus, the statute does not require a fund to be more broadly applicable than the employer-union fund in this case. *See* House Report No. 93–533, 3 U.S.Code Congressional & Admin. News, 93rd Congress, 2nd Session, 1974, p. 4648.

■ The trustees of the Pension Fund have made a reasonable interpretation of the plan in finding Thompson "employed" in the industry and the trade and craft. The courts defer to a reasonable interpretation by the trustees. "Although the determination of eligibility for pension benefits seems to be a matter of contract law, 'the clear weight of federal authority' mandates that the trustee's determinations of eligibility are to be upheld unless arbitrary or capricious." *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 362 (5th Cir.1981). The reasonableness of the same interpretation of ERISA, 29 U.S.C. § 1053(a)(3)(B), is manifest on its face and on the obvious overall intent and purpose of ERISA. Furthermore, this conclusion is reinforced by the fact that the Secretary of Labor has reached the same conclusion in his regulation of 1981. It follows that the district court properly gave judgment for the defendants, dismissing appellant's suit.

AFFIRMED.