The ELECTRICIANS HEALTH, WELFARE AND PENSION PLANS, I.B.E.W., LOCAL NO. 995

v.

Ciro C. GULINO, and Saia Electric, Inc.

Civ. A. No. 81–239–B.

United States District Court,
M.D. Louisiana.

Sept. 20, 1984.

76. Tr. at 2689–90.

W.P. Wray, Jr., Baton Rouge, La., for plaintiffs.

Richard B. Nevils, Baton Rouge, La., for defendants.

POLOZOLA, District Judge.

This suit was filed by the Electricians Health and Welfare Plan and the Electricians Pension Plan, International Brotherhood of Electrical Workers, Local 995 (The Plan) to determine the eligibility of Ciro C. Gulino to participate in the union's pension plan. Plaintiff seeks a judgment declaring that Gulino is not entitled to participate in the union pension plan, and if he is not entitled to participate, what contributions, if any, The Plan must refund to Gulino's employer, Saia Electric, Inc. (Saia). In the alternative, should the Court find that Gulino is entitled to participate in the pension plan, then the plaintiffs ask that judgment be rendered against Saia for employer contributions owed.[1]

The parties submitted this matter to the Court on the following facts and circumstances which have been stipulated to by the parties:

1) The Plaintiffs are multiple employer trusts which have been established for the purpose of providing for pension and health and welfare benefits for certain defined employees.

2) The Health & Welfare Trust was established in 1964 as the result of collective bargaining between the employers, through their representatives, Baton Rouge Chapter, Inc., National Electrical Contractors Association (NECA), and the employees, through their representatives, International Brotherhood of Electrical Workers Local 995 (Local 995). The Pension Trust was established in 1970 as the result of collective bargaining between the same parties. Each Trust has been separately established pursuant to applicable provisions of the Taft-Hartley Act, as amended and are qualified trusts under all applicable laws, rules and regulations.

---

1. This Court has jurisdiction under 29 U.S.C. § 1132(a)(3) because the trustees of the Plan are fiduciaries, as defined in 29 U.S.C. § 1002(21)(A), seeking to obtain equitable relief to enforce the terms of the pension plan.

3) Each collectively bargained agreement intervening between the years 1964 and 1970 obligated the employers to make certain contributions for health and welfare to the Health & Welfare Trust for covered employees and each collectively bargained agreement since 1970 has likewise obliged the employer for contributions to both Health & Welfare and Pension Trusts based upon agreed upon sums for each hour of work of each covered employee. The collectively bargained agreements for the years 1964 and 1970 were made a part of the record as Exhibits "A" and "B", respectively.

4) A copy of the Health & Welfare Trust Agreement (and attachments thereto) and Plans (and amendments thereto) was made a part of the record and identified as Exhibit "C". A copy of the Pension Trust Agreement (and amendments thereto) and plans (and amendments thereto) was made a part of the record and identified as Exhibit "D".

5) The rates of contribution per hour worked by each covered employee required to be made by employers to the Health & Welfare Trust and Pension Trust have increased during the years intervening between 1964 and 1970 to the present date and each increase in the rate has been the result of collective bargaining between the parties through their representatives.

6) Saia Electric, Inc. is a domestic corporation domiciled in the Parish of East Baton Rouge, State of Louisiana and is engaged in the electrical construction business in the Baton Rouge area. Saia is a member of NECA and has been such and represented by NECA in collective bargaining with Local 995 since 1960, or before.

7) Ciro C. Gulino is a person of full age of majority and a resident of the Parish of East Baton Rouge at all times pertinent to this litigation, and has been employed by Saia as its general superintendent since 1960. The employment of Gulino by Saia as its general superintendent has been continuous and uninterrupted.

8) As general superintendent for Saia, Gulino is in charge of and supervises all Saia jobs in the field and has general supervision over the general foreman, foreman and electricians employed by Saia. Gulino, on behalf of Saia, has the responsibility of directing the activities of the employees of Saia in the field and adjusts their grievances for Saia with Local 995 stewards and agents and generally exercises the authority of Saia with respect to employees who are employed by Saia in the field.

9) Gulino is not a member of Local 995. He withdrew his membership and his designation of Local 995 as his agent for bargaining purposes. (By way of a letter filed in the record on January 31, 1984, the parties have informed the Court that Gulino's withdrawal from the Union was effected on August 7, 1970.)

10) Local 995 does not bargain for wages, hours, terms or conditions of Gulino's employment. Saia pays Gulino a salary irrespective of the weather, working conditions, or any other conditions except those policies for management and other salaried employees for Saia. Gulino does not keep any record of his time. Gulino does not work with his tools.

11) Gulino is presently covered by hospitalization through Saia's group hospitalization.

12) The records of the Health & Welfare Trust and Pension Trust reveal that contributions for Gulino were made by Saia between October 1, 1970 and 1975 in the following amounts:

| | |
|---|---|
| 1970 | $162.00 |
| 1971 | 990.00 |
| 1972 | 936.00 |
| 1973 | 936.00 |
| 1974 | 1,040.00 |
| 1975 | 1,384.00 |

In 1975 Saia discontinued making contributions to the Trusts with Gulino's express knowledge, consent and agreement and Gulino became a member of Saia's pension plan (ESOP) for salaried employees. Gulino's participation in the

Saia pension plan is continuing as of this date.

13) Saia made no contributions for Gulino to either the Health & Welfare Trust or the Pension Trust in 1976, 1977, 1978 or 1979. Beginning in July, 1980, Saia made contributions for Gulino to the Health & Welfare and Pension Trusts as follows:

| | |
|---|---|
| 1980 | $1,890.00 |
| 1981 | 1,709.26 |

14) Saia discontinued making contributions for Gulino in 1981 and has not made any further contributions since 1981.

15) After the contributions for Gulino were made by Saia in 1980, Gulino requested the Trustees of the Health & Welfare and Pension Plan Trusts to give consideration to his eligibility for participation in the respective plans. The Trustees were informed of the nature of Gulino's work, his non-union status, his position with Saia and of the factors mentioned above relative to his employment. After consultation with counsel, the Trustees duly considered Gulino's eligibility and determined that Gulino was not eligible for participation. Gulino was thereafter furnished with the official letter of the Trustees denying his eligibility in accordance with the determination. A copy of this letter was made a part of the record and is identified as Exhibit "G".

The parties have submitted the following questions to the Court:[2]

1) Whether or not, as a matter of law, Gulino is entitled to participate in Plaintiffs' Trusts;

2) Whether or not the action of the Trustees of Plaintiffs' Trusts was arbitrary and capricious in determining that Gulino was a nonunion management employee of Saia who was not employed in covered employment nor a member of the bargaining unit, and therefore, ineligible to participate in Plaintiffs' Trusts;

3) If the Court should find that Gulino was entitled to participate in the Plaintiffs' Trusts, the amount, if any, that Saia must contribute to the Trusts;

4) If Gulino was not entitled to participate, what amount, if any, must the Trusts return to Gulino's employer, Saia; and

5) Whether or not the Plaintiffs' Trusts are entitled to recover attorneys' fees.

■ The first two questions of law presented to the Court may be considered together, because they essentially ask the same question. It is now well settled that determinations made by pension fund trustees of eligibility for pension benefits must be sustained as a matter of law unless the plaintiff can prove the trustees' decision is arbitrary or capricious. *Thompson v. Asbestos Workers Local No. 53 Pension Fund,* 554 F.Supp. 296, 300 (M.D.La.1983), *affd.,* 716 F.2d 340 (5th Cir.). See, also: *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 362 (5th Cir.1981); *Bayles v. Central*

---

**2.** It must be noted that only Gulino's eligibility to participate in, and Saia's liability, if any, for contributions to, the Pension Plan is before the Court. Gulino's eligibility to participate in the Health & Welfare Trust is not before the Court because the letter of October 8, 1980 informing Gulino of the Trustees' decision refers only to "the Plan," and the only Plan sections referred to are sections in the Pension Trust Agreement. See Exhibit "G", Stipulation of Fact No. 15. In addition, the October 8, 1980 letter refers to "inception of the Plan, October 1, 1970," which is the inception date of the Pension Plan. The Health & Welfare Trust Plan was formed in 1964. On the question of whether Saia is due a refund for overpaid contributions, both parties' memoranda refer the Court to § 6.08 of the

Pension Plan, and neither side briefed the question of, or referred the Court to, provisions of the Health & Welfare Trust regarding refunds of overpayments. Thus, the Court must assume that the parties did not intend to put that issue before the Court. Furthermore, there is no indication in the record that the two trusts have been merged or consolidated in any way. The two trusts provide different benefits and only the Pension Trust Agreement has a provision for refunds. While Gulino is probably not eligible to participate in the Health & Welfare Trust for the same reasons he is not eligible to participate in the Pension Trust, different legal issues are raised on the question of a refund, and a fuller development of the record is necessary before the Court can reach and decide this issue.

*States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 99 (5th Cir. 1979). It must be noted that the Court is not being asked to determine whether any violation of ERISA's statutory vesting requirements has occurred. See, e.g., *Johnson v. Franco*, 727 F.2d 442 (5th Cir.1984).[3] The only issues with respect to the trustees' actions before this Court are whether Gulino was entitled to participate *under the terms of the pension plan* after withdrawing his union membership, and, if not, what disposition must be made of the contributions made by Saia *subsequent* to that withdrawal.[4] Thus, in determining whether the decision of the trustees to deny Gulino eligibility to participate in the plans was arbitrary or capricious, the Court must look to the Plans and not to the ERISA statute.

■ The Court finds that the trustees' interpretations of the two plans was reasonable and should not be overturned by this Court. *Thompson v. Asbestos Workers*, supra, 716 F.2d at 343.

A copy of the Trust Agreement by which the Health and Welfare Plan was established has been filed in the record as Exhibit "C".[5] Article 5, Section 2 of the original Plan defines "Recipients of Benefits," as follows:

Benefits may be provided in accordance with Section 1 of this Article only for any Employee of a Contributing Employer covered by a collective bargaining agreement between the Employer and the Union; ....

Section 3 of Article 1 of the Plan defines Employees as "all of the Employees of each Employer for whom the Union is the collective bargaining representative,...." [6] There is no dispute that Saia is an Employer required to contribute to the plan under the Collective Bargaining Agreement.[7] However, it is also clear from the quoted portions of the plan that an "Employee" is the only person eligible to receive benefits under this plan, and an "Employee" must be one for whom the union is the collective bargaining representative. According to the stipulations filed by the parties,[8] Gulino withdrew his designation of Local 995 as his agent for bargaining purposes on August 7, 1970. Local 995 does not bargain for Gulino's wages, hours, terms or conditions of employment.[9] Therefore, Gulino has not been an "Employee," as that term is defined in the Plan since August 7, 1970, and, therefore, is not eligible to participate in benefits provided under the terms of the Health & Welfare Plan. Thus, the trustees' interpretation was reasonable, and cannot be said to be arbitrary or capricious.

The plaintiff filed a copy of the Pension Plan Trust Agreement of October 1, 1970, and a copy of the Amended and Restated Agreement and Declaration of Trust, dated September 30, 1976, into the record.[10] Section 1.12 of the Amended and Restated Agreement defines "Participants" in the Pension Plan, as follows:

The term "Participant" as used herein shall mean any person who has completed the requirements for a Vested Pension (which neither party suggests is the issue before this Court) and any Employ-

3. No determination has been made by the trustees that Gulino was ineligible for benefits prior to August 7, 1970, or that his right to receive benefits which may have accrued between 1964 and August 7, 1970, has been terminated and not merely suspended during the time he is not a member of the Union.

4. Gulino withdrew from the union in October of 1970. See, Stipulation of Fact No. 12. The Court must determine whether the contributions made by Saia subsequent to this date must be returned to Saia or supplemented by additional contributions by Saia.

5. Included in the Exhibit is a copy of the amendments made to that Plan, effective January 24, 1980.

6. The amendments made to the Agreement in 1980 did not change any portion of the definition of "Employee" relevant to this case.

7. See Stipulation of Fact No. 6.

8. See Stipulation of Fact No. 9.

9. Stipulation of Fact No. 10.

10. See Exhibit 'D'.

ee who has worked in covered employment for the minimum amount of time to qualify for pension credits....

"Covered Employment" is defined in Section 1.07 of the Amended Agreement as "employment for which the Employer is obligated by virtue of his Collective Bargaining Agreement with the Union to contribute to the Pension Fund,...." Saia is not obligated by virtue of any collective bargaining agreement insofar as Gulino's terms and conditions of employment to make contributions to the pension fund.[11] Because Gulino does not work in a "Covered Employment," he is not eligible to participate in the Pension Trust. The Court finds this interpretation by the trustees to be reasonable, and neither arbitrary nor capricious.

Having found the trustees' denial of Gulino's eligibility to participate to be reasonable, it is not necessary for the Court to determine what additional amount Saia must contribute to the Plan.

It is necessary for the Court to determine what amount, if any, the Pension Trusts must return to Saia. In order to resolve this issue, the Court must analyze 29 U.S.C. § 1144 to determine what law is applicable on this question. Subsection (a) of section 1144 provides that any and all State laws are superseded insofar as they relate to employee benefit plans. However, subsection (b)(1) of section 1144 provides: "This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." Thus, the Court must decide whether the Pension Trust must return Saia's pre-1975 contributions on the basis of the terms of the Pension Trust and applicable state law.

Insofar as contributions made after January 1, 1975, are concerned, 29 U.S.C. § 1103(c)(1) provides, in part:

(T)he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

This prohibition in subsection 1103(c)(1) is modified by section 1103(c)(2)(A), which states:

(2)(A) In the case of a contribution,

. . . . .

. . . .

(ii) made by an employer to a multiemployer plan by a mistake of fact or law (other than a mistake relating to whether the plan is described in section 401(a) of Title 26 or the trust which is part of such plan is exempt from taxation under section 501(a) of Title 26), paragraph (1) shall not prohibit the return of such contribution or payment to the employer within six months after the plan administrator determines that the contribution was made by such a mistake.

(As amended by Pub.L. 96–364, Title III, § 310, Title IV, §§ 402(b)(2), 410(a), 411(c), Sept. 26, 1980, 94 Stat. 1296, 1299, 1308.)

The above amendment to subsection 1103(c)(2)(A) was a part of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Public Law 96–364, which modified many provisions of the original ERISA statute insofar as multiemployer pension plans were concerned. The effective date of the amendment to subsection 1103(c)(2)(A) was explicitly provided for in the MPPAA, as follows:

The amendment made by this section shall take effect on January 1, 1975, except that in the case of contributions received by a collectively bargained plan maintained by more than one employer before the date of enactment of this Act, any determination by the plan administrator that any such contribution was made by mistake of fact or law before such date shall be deemed to have been made on such date of enactment.

(Pub.L. 96–364, Title IV, § 410(c), Sept. 26, 1980, 94 Stat. 1296, 1308.)

---

**11.** See Stipulation of Fact No. 10.

As the citation to the amendment indicates, the date of enactment of the MPPAA is September 26, 1980. See Pub.L. 96–364, 94 Stat. 1308. Section 410(c) of the MPPAA specifically provides that the 1980 amendment to 29 U.S.C. § 1103(c)(2)(A) was effective on January 1, 1975, *except* where there has been a determination by the plan administrator before September 26, 1980, that a contribution was made to the plan due to a mistake of fact or law. In the matter pending before this Court, no such determination was made by the plan administrator before September 26, 1980. Thus, this Court finds that the 1980 amendment to section 1103(c)(2)(A) of Title 29 is effective as of January 1, 1975. Whether or not Saia's contributions in 1975, 1980, and 1981 should be refunded must be decided according to the terms of the amended version of subsection 1103(c)(2)(A). *Ethridge v. Masonry Contractors, Inc.*, 536 F.Supp. 365, 368 (N.D.Ga.1982).

There has never been an explicit determination by the trustees that the contributions made on behalf of Gulino by Saia were made by a mistake of fact or law. A narrow reading of the amended form of 1103(c)(2)(A) leads to the conclusion that a contribution may be returned *only* after the plan administrator has determined that the contribution was made by a mistake of fact or law. In this action, the only determination made by the trustees was that Gulino was "not a participating employee or participant under the Plan (See 3.09 of the Plan booklet)."[12] The trustees' letter is dated October 8, 1980. However, after

this letter was mailed, Saia made another contribution of $1,709.26 to the plan in early 1981.[13]

■ The foregoing facts raise the issue of whether or not this Court must remand the case to the plan administrator for an initial determination of the question of whether a refund is due because overpayments were made due to a mistake of fact or law. In other words, must the employer exhaust his remedies with the plan administrator before seeking judicial relief on the question of a refund made due to a mistake of fact or law. It is clear from the pleadings, the issues of law set forth in the Stipulation, and the memorandums filed herein that the Plan Trustees do not intend to refund any contributions to Saia absent a judgment from this Court declaring that they must do so. The trial memorandum of the plaintiff also makes clear that the plaintiff does not believe that it is obligated by 29 U.S.C. § 1103(c)(2)(A) to return any mistaken contributions because the contributions Saia made on behalf of Gulino, an ineligible employee, were not made on the basis of a mistake of fact.[14] Thus, even though the trustees' letter denying Gulino's eligibility is not precisely in conformity with the statutory requirement that the "plan administrator determines that the contribution was made by (a mistake of fact or law)," 29 U.S.C. § 1103(c)(2)(A)(ii), the question of refundability of Saia's contributions is properly before the Court.[15] The denial of a refund

---

**12.** See Exhibit 'G' submitted with the Stipulation of Facts, and Stipulation of Fact No. 15.

**13.** This contribution prompted the filing of this action for declaratory judgment by the Plan Trustees on March 26, 1981.

**14.** Plaintiff further contends that the trust agreement itself is more restrictive than the statute because the trust agreement allows refunds *only* in the case of a mistake of fact, and not in the case of a mistake or law, which the statute provides for.

**15.** In *Ethridge v. Masonry Contractors, Inc.*, supra, the court concluded that a finding by plan administrators that a contribution was made by a mistake of fact or law was not a prerequisite

to the return of certain overpayments. The Court held that such a requirement vests plan administrators with too much discretion, and would allow plan administrators to either (1) never make the appropriate determination or (2) determine that no "contribution was made by such mistake," 29 U.S.C. § 1103(c)(2)(A), contrary to the intent of Congress, and leaving overpaying employers without any legal recourse. 536 F.Supp. at 368. However, this Court is not willing to go that far, inasmuch as the *Ethridge* opinion all but reads the requirement of the plan administrators determination of the character of the overpayment completely out of the statute. Bad faith decisions by the plan administrator to never make the appropriate determination can be handled on a case by

which is implicit in the pleadings, the Stipulation, and memoranda makes the Trustees' position clear. Therefore, a remand of this case to the Trustees for their determination of the cause or character of the overpayment would be expensive, inefficient, and probably futile for Saia.[16]

 Applying principles of state law and the terms of the Pension Trust Agreement to the facts of this case, the Court finds that Saia is not entitled to a refund of contributions made prior to January 1, 1975. Section 6.08 of the Amended and Restated Agreement & Declaration of Trust,[17] provides as follows:

> "*Erroneous Contributions:* Contributions made to the Fund by any Employer by a mistake of fact may be refunded to the Employer within one year after the erroneous payment."

Saia argues that principles of unjust enrichment and equitable relief support its contention that the pre-1975 contributions should be refunded to it. However, where, as here, the parties have made specific contractual provisions for refund, such provisions constitute the law to be applied between the parties. Willing and capable parties may provide in the agreement more restrictive terms, as long as the parties and the terms of the contract do not violate the requirements of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). *United Mine Workers of America Health and Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982); *Johnson v. Franco*, 727 F.2d 442, 446 (5th Cir.1984). Where pension benefits are be-

ing provided for a large group of employees, it facilitates actuarial certainty by limiting the time and reasons for obtaining refunds. A multiemployer trust providing benefits for many employees could not achieve the goals which the Labor Management Relations Act, ERISA, and the MPPAA were enacted for,[18] if funding provided a decade ago or more were to be refunded. Contracts which are negotiated between the union and the employers after these earlier contributions to the plan were made provide for certain benefits which require a certain level of funding.[19] Section 6.08 of the Pension Trust Agreement serves the interests of all parties to the agreement. Finally, there is no basis in Louisiana law for departing from, or refusing to give effect to, the terms of the contract or agreement. Thus, Saia may be refunded erroneous contributions made by it only if such payment was made under a mistake of fact *and* only within one year of the erroneous payment. More than one year has elapsed since these payments were made. Therefore, Saia is not entitled to a refund of contributions made to the Pension Trust on behalf of Gulino in 1970, 1971, 1972, 1973, and 1974.

The language of 29 U.S.C. § 1103(c)(2)(A) is permissive, and sets forth the broadest limits Congress was willing to extend to employers to seek refunds of erroneous contributions. The parties may derogate from that subsection to the extent that they choose to be more restrictive, but they may not exceed the limits set by Congress. Thus, even though the statute would allow

case basis under established principles of law. A determination by the plan administrator that "no contribution was made by such a mistake," certainly does not leave employers without legal recourse, as it is now well established that actions of pension plan administrators and trustees are subject to judicial review. *Johnson v. Franco*, 727 F.2d 442 (5th Cir.1984); *Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 100 (5th Cir.1979).

**16.** By analogy, in a court making a judicial review of an action taken by an administrative agency may decline to require exhaustion of administrative remedies where the agency's position is so clear and fixed that it would be futile

to require proceedings at the agency level. See, K. Davis, 4 *Administrative Law Treatise* § 26:1, 414–15 (1983).

**17.** See Exhibit "D".

**18.** It is clear these statutes were enacted to safeguard the retirement plans of American workers.

**19.** It makes good sense to prevent refunds of contributions years after they were made because such action might necessitate radically different positions each time the parties negotiate a contract in an effort to maintain the anticipated level of benefits.

the return of overpayments made on the basis of mistakes of fact or law, the Pension Trust Agreement limits refunds to those overpayments made only as a result of a mistake of fact.

The 1980 amendment to subsection 1103(c)(2)(A), makes it necessary to read out of the agreement the one year refund period in § 6.08 of the Pension Trust Agreement in favor of the shorter period provided by the statute. This provision does not cause a problem in the matter before this Court since the statute allows refunds to be made within six months of the plan administrator's determination, and not just within six months from the date of the contribution. Under the facts of this case, the letter of October 8, 1980, which informed Gulino of his ineligibility to participate in the plan has been treated by the Court as the plan administrator's determination. Plaintiffs filed this suit on March 26, 1981, or, within six months of this determination. Even though it was the Trustees of the Plan and not Saia who sought a declaratory judgment from the Court, the filing of suit and the answer of Saia to the suit are consistent with the requirement that a refund be sought within six months of the plan administrators' determination.

█ This Court must now determine whether the payments made by Saia to the Pension Trust in 1975, 1980, and 1981 were made by a mistake of fact. If not, they may not be refunded to Saia under the terms of the trust agreement. The Louisiana Civil Code provides that there are two kinds of "error": errors of fact and errors of law.[20] An error of fact is that which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.[21] One is under an error of law when he is truly informed of the existence of

facts, but draws from them erroneous conclusions of law.[22] The jurisprudence interpreting these Codal provisions is not particularly helpful on this issue, since the jurisprudence is directed to the question of enforceability of a contract entered into when the parties are operating under an error. In the instant action, the Court need only determine the character of the error, since the parties have contractually provided for the results of those errors in § 6.08 of the Pension Trust Agreement. Thus, the question before the Court is whether or not Saia's actions in contributing to the fund was a mistake of law or a mistake of fact. The Court finds that Saia's contributions in 1975, 1980, and 1981 were the result of a mistake of law, and not a mistake of fact, and thus are not refundable under the terms of the Pension Trust Agreement.

Saia was informed of or capable of ascertaining all the relevant facts concerning Gulino's status under the collective bargaining agreement. Gulino's deposition testimony reveals that he withdrew from the Union at the request of his employer.[23] In addition, Gulino knew his salary was above the top rate provided in the collective bargaining agreement at all times.[24] Furthermore, Felix G. LeBlanc, Jr., Saia's Executive Vice-President, was aware that Gulino was not covered by the wage scale in the collective bargaining agreement.[25] Even more important is the fact that LeBlanc represented the employers' bargaining agent, the Baton Rouge Chapter, Inc. of the National Electrical Contractors Association, when the Pension Trust Agreement was amended on September 30, 1976.[26] Aware of these facts, Saia proceeded to make contributions to the Pension Trust Fund on behalf of Gulino. In support of its request for a refund, Saia argues that it resumed making contributions

**20.** La.Civ.Code, Art. 1820.

**21.** Id., Art. 1821.

**22.** Id., Art. 1822.

**23.** Deposition, Gulino, pp. 20–21. Gulino was mistaken on the date he withdrew from the

Union. The parties have stipulated to the correct date.

**24.** Id., pp. 9–11.

**25.** Deposition, LeBlanc, pp. 14–15.

**26.** See Exhibit "D".

in 1980 and 1981 upon the advice of George Reusch, the plan administrator, who represented that Gulino could add to the benefits he had vested in the pension plan by making additional contributions. It has already been held that such an asserted reliance is not a mistake of fact, but one of law. *Martin v. Hamil*, 608 F.2d 725 (7th Cir. 1979). Even if Saia acted without actual knowledge of Gulino's withdrawal from the Union, the deposition testimony cited above makes it clear that Saia had actual knowledge of certain facts and had the opportunity to discover additional facts had it attempted to do so.[27] Thus, the contributions made by Saia in 1975, 1980, and 1981, are not refundable.[28]

 Finally, the Court must decide whether or not to award attorneys' fees to the Pension Trust Fund, pursuant to the discretionary authority granted to the Court under 29 U.S.C. § 1132(g)(1). In *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980), the Fifth Circuit set forth five factors a court should consider in deciding whether or not to award attorneys' fee:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. (citations omitted).

The Court finds an absence of bad faith on the part of Saia. In addition, Saia's conduct did not in any way jeopardize the security of the beneficiaries' interest in the pension plan. Unlike an action under 29 U.S.C. § 1145, this suit did not involve a situation where the plan was forced to sue for delinquent contributions, but was based on Saia's intermittent contributions, and the representations of George Reusch, the plan administrator. Thus, no attorneys' fees or cost should be awarded to the plaintiff under the facts of this case.

Because some of the contributions made by Saia may have been made to both plans, and since Saia may be entitled to a refund on the health plan, the parties shall file with the Court within twenty days from the date of this opinion a proposed judgment which shall conform to the opinion and also set forth the amounts of contributions Saia made to the pension plan.

---

27. An excellent discussion of the law on mistake of fact and acting in conscious ignorance of all the facts may be found in *Armco, Inc. v. Southern Rock, Inc.*, 696 F.2d 410 (5th Cir.1983), and need not be repeated herein.

28. See *Martin v. Hamil*, supra; *Ethridge v. Masonry Contractors, Inc.*, supra.