Roger C. JOHNSON, Plaintiff-Appellee
Cross-Appellant,

v.

Albert FRANCO, Shannon J. Wall, Martin F. Hickley, et al., Defendants-Appellants Cross-Appellees.

No. 83–3009.

United States Court of Appeals,
Fifth Circuit.

March 19, 1984.

Stone, Pigman, Walther, Wittmann & Hutchinson, David L. Stone, Charles L. Stern, Jr., New Orleans, La., Proskauer, Rose, Goetz & Mendelsohn, Bettina B. Plevan, New York City, for defendants-appellants cross-appellees.

McGlinchey, Stafford, Mintz & Hoffman, B. Franklin Martin, III, Marie A. Moore, New Orleans, La., for plaintiff-appellee cross-appellant.

Before GEE, TATE and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Johnson, born in 1928, sues to recover monthly pension benefits allegedly owed him since 1969, when his right to receive the pension vested because of his twenty years of covered employment. Johnson contends that suspension under the multi-employer employee pension benefit

plan of an employee's vested right to receive monthly pension benefit payments amounts to a statutorily prohibited forfeiture under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, of pension benefits during the period of suspension. The central (but not only) issue of this appeal concerns ERISA's intended meaning of "normal retirement age," and arises out of the plaintiff's contention, sustained by the district court, that the plan's provision for suspension-for-feiture of his vested benefit rights for this reason is contrary to an ERISA provision that requires pension plans subject thereto to "provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of *normal retirement age.*" § 203(a) of ERISA, 29 U.S.C. § 1053(a) (emphasis added).

We reverse the district court's determination that the "normal retirement age" must under the statute be the age at which an employee's right vests to receive normal retirement benefits. We instead hold, consistently with other circuits that have approached the issue, that the statutorily intended meaning of "normal retirement age" is provided by ERISA's own definitions section, which defines the meaning of terms used for purposes of that statute, § 3 of ERISA, 29 U.S.C. § 1002. Under this provision, the present plan's definition of "normal retirement age" as 65 is, for the reasons set forth below, in compliance with ERISA's statutory requirements for a covered plan's "normal retirement age," § 3(24) of ERISA, 29 U.S.C. § 1002(24).

*Procedural Stance*

The plaintiff Johnson sues the National Maritime Union Pension Trust of the National Maritime Union Pension and Welfare Plan (the "plan"), and its administrator (Franco) and trustees, to recover unpaid monthly pension benefits allegedly due from June 26, 1969 (the date of Johnson's retirement from employment connected with the National Maritime Union) to December 1, 1977 (the date on which the plan

began paying him pension benefits). The district court held that the plan had wrongfully denied pension benefits to Johnson from January 1, 1976, the effective date of ERISA, a holding we reverse on the plan's appeal.

With regard to other contentions raised by Johnson, the district court held that he was not entitled to his pension benefits from June 26, 1969 to January 1, 1976 either under the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, or under applicable provisions of state law. On Johnson's cross-appeal from these rulings, we affirm.

*Context Facts*

The National Maritime Union ("NMU") is a labor organization whose membership consists entirely of seamen *unlicensed* by maritime authorities. With several employers of its seamen, NMU had created a pension plan for the benefit of its members employed by them. The plaintiff Johnson was an NMU member from 1946 until his retirement on June 26, 1969 and was employed during that period as an "unlicensed" seaman covered by the plan. At the time of his retirement in 1969, Johnson had accumulated more than 20 NMU "pension credits," which entitled him to a $250 per month "Service Pension" under the terms of the plan, provided that he refrain from certain types of employment after his retirement.

At the time of his retirement, the provisions of the NMU plan prohibited pensioners from becoming reemployed in any capacity aboard an American flag vessel or any vessel covered by an NMU collective bargaining agreement. This plan restriction was in effect until May 1973, when it was modified to allow employment on an American flag vessel, provided that the vessel was not covered by an NMU collective bargaining agreement. Johnson first applied for his pension in April 1973, but was denied benefits since he was then employed aboard an NMU contract vessel—albeit as a "licensed" seaman.[1] On November 23, 1977,

---

1. After his retirement from NMU-represented

"unlicensed" employment on June 26, 1969,

the plan restrictions were again amended so as to preclude payment of vested pension benefits only for employment as an *"un* licensed" seaman on an NMU contract vessel. In 1978, Johnson again applied for pension benefits. Since Johnson was then employed as a "licensed" (not as an *"un* licensed") seaman, the plan paid him benefits retroactively to December 1, 1977, the effective date of the amended plan restriction.

Johnson again demanded benefits for the period between June 26, 1969 (the date his employment as an *unlicensed* seaman terminated) and December 1, 1977 (the date the amended plan permitted him to draw benefits despite his employment as a licensed seaman). The plan again denied benefits for this period, relying upon a provision of the plan that the "normal retirement age" was 65 and upon other limitations of the plan, based upon continued maritime employment, that suspended Johnson's right to receive his service pension prior to December 1, 1977. Johnson then instituted the present action.

## I. *The ERISA Claims*

■ The district court granted Johnson retroactive benefits from January 1, 1976 to December 1, 1977 on the ground that ERISA prohibited the suspension of his pension benefits by the type of reemployment restrictions imposed by the NMU plan for that period. The plan appeals this ruling. The threshold issue in this regard is whether the district court erred in determining that for purposes of ERISA-protections the "normal retirement age" is not the age of 65 as expressly defined by the plan, but instead is the date (in 1969) at which the plan participant (Johnson) became eligible to receive the normal retirement benefits provided for service pensions by the plan.

The plaintiff Johnson relies upon an ERISA provision that "each pension plan shall provide that an employee's right to his nor-

mal retirement benefit is *nonforfeitable upon the attainment of his normal retirement age.*" § 203 of ERISA, 29 U.S.C. § 1053 (emphasis added). Section 203 does not, however, by itself bar a plan's provision that suspends the payment of benefits *before* a pension plan participant reaches "normal retirement age." *Hurn v. Retirement Fund of Plumbing, Heating & Piping Industry,* 648 F.2d 1252, 1253 (9th Cir.1981); *Riley v. MEBA Pension Trust* 586 F.2d 968, 969–970 (2d Cir.1978) ("Riley II") (citing legislative history reference). The restriction on reemployment in the NMU plan would therefore not violate ERISA § 203 if it suspended Johnson's retirement benefits *before* he reached "normal retirement age", within the intended meaning of the statute.

Section 3 of ERISA, 29 U.S.C. § 1002, entitled "Definitions", provides the meaning of certain terms "[f]or purposes of this subchapter [ERISA]." Section 3(24), 29 U.S.C. § 1002(24), defines "normal retirement age":

> (24) The term "normal retirement age" means the *earlier* of—
>
> (A) the time a plan participant attains normal retirement age under the plan, or
>
> (B) the *later* of
>
> (i) the time a plan participant attains age 65, or
>
> (ii) the 10th anniversary of the time a plan participant commenced participation in the plan. [Emphasis added.]

By comparison, the present NMU pension plan defines "normal retirement age" as:

> [T]he first day of the calendar month coincident with or immediately following a Participant's 65th birthday or if later, the first day of the calendar month following the tenth anniversary of the day the person becomes a Participant....

Under the plan's definition, Johnson will reach "normal retirement age" at age 65, since that date falls later than his 10th anniversary with the plan.[2] Similarly, by

---

Johnson worked only as a "licensed" seaman. Seamen become "licensed" by maritime authorities when found qualified to serve as officers on vessels.

**2.** During the period for which Johnson claimed benefits, Johnson had been with the plan longer than 10 years, but he had not yet reached age

the definition of subparagraph B of § 3(24) of ERISA, Johnson reaches normal retirement age at 65, since that date is later than his tenth anniversary with the plan. By either definition, thus, Johnson will not reach "normal retirement age" until he reaches age 65. Consequently, the NMU plan's provision for a "normal retirement age" of age 65 does not contravene the ERISA-specified minimum requirement for a plan's "normal retirement age"—for that reason, it does not implicate a violation of the provision of ERISA that a pension plan must provide "that an employee's right to his normal retirement benefits is nonforfeitable upon the attainment of his *normal* retirement age." § 203 of ERISA, 29 U.S.C. § 1053 (emphasis added).

We are thus unable to agree with the thoughtful opinion of the district court, by which it reasoned that the "normal retirement age" should be derived from the substance of the plan's provision for retirement benefits. By this reasoning, Johnson had reached the "normal retirement age", even though the plan defined that term as age 65, because in 1969 his rights vested to a full service pension, which therefore—construing the plan as a whole—as a practical matter constituted his reaching the normal retirement age. We do not find to be persuasive as applied to the present facts the reasoning and holding in an unreported decision of the District of Columbia district court, *Nichols v. Board of Trustees of the Asbestos Workers*, etc., No. 79–0263 (D.D.C. Feb. 23, 1979), upon which the present trial court relied. (We pretermit its possible distinguishability as involving a plan that (unlike the present) did *not* expressly provide for "normal retirement age".)

In summary, under § 3(24) of ERISA, 29 U.S.C. § 1002(24), quoted *supra,* the "normal retirement age" may be *either* (1) the age that a participant "attains normal retirement age *under the plan,*" § 3(24)(A) (emphasis added) *or* (2) "the time a plan participant attains age 65" (or the 10th anniversary of his participation in the plan, if he became a participant later than age

55), § 3(24)(B), quoted above—whichever is the *"earlier"* of the two. With regard to the issue before us, the present pension plan expressly defines its "normal retirement age" as age 65. Under its statutory terms, ERISA would invalidate, for forfeiture-suspension purposes, only a "normal retirement age *under the plan*", § 3(24) of ERISA, 29 U.S.C. § 1002(24), that does not meet the statutorily prescribed minimum "normal retirement age" provided by § 3(24)(B) of ERISA, 29 U.S.C. § 1002(24)(B). The "normal retirement age" specified by the present plan—which would be controlling as to nonforfeiture were it *earlier* (as it is not) than the ERISA minimum—does indeed meet ERISA's minimum age-65 requirement. Consequently, the plan's trustees were not barred by ERISA's nonforfeiture provision from a plan stipulation that suspended payment of Johnson's vested pension rights following the effective date of ERISA on January 1, 1976.

Our holding is consistent with that of other circuits that the "normal retirement age" provided by a pension plan controls the issue as to the date upon which a participant's pension rights become nonforfeitable under ERISA, provided the normal retirement age so provided meets ERISA's minimum requirements (as does the present). *Janowski v. International Brotherhood of Teamsters*, 673 F.2d 931, 937 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982); *Hernandez v. Southern Nevada Culinary & Bartenders,* 662 F.2d 617, 619–20 (9th Cir.1981); *see also Fine v. Semet,* 699 F.2d 1091, 1093 (11th Cir.1983). In *Hernandez,* a case involving issues very similar to those presented here, the Ninth Circuit found that although a pensioner had a "100% vested interest in his accrued pension benefits," he had "no vested right *to receive* pension benefits until he reaches normal retirement age" (in that case, defined by the plan as age 62). *Hernandez, supra,* 662 F.2d at 618–619 (italics the court's).

65. Johnson was born on January 31, 1928, and will not reach that age until 1993.

Since Johnson had not reached "normal retirement age" as defined either by § 3(24) of ERISA, 29 U.S.C. § 1002(24), or by the NMU pension plan, he was not entitled to the protection afforded by ERISA's nonforfeitability provision, § 203, 29 U.S.C. § 1053, for the period of January 1, 1976—September 1, 1977, during which the NMU plan suspended his benefits. Provided that post-employment restrictions, such as those that suspended Johnson's pension benefits, do not violate other provisions of ERISA, pension plans may adopt restrictions which limit or suspend the payment of vested pension benefits prior to the time the pensioner reaches "normal retirement age," such as provisions suspending payments from multi-employer funds (while the entitled employee works in the same craft or trade and in the same geographic area. *See e.g.,* 29 U.S.C. § 1053(a)(3)(B)(i); *Thompson v. Asbestos Workers Local No. 53 Pension Fund,* 716 F.2d 340 (5th Cir.1983)). We find, therefore, that the district court erred in ruling that the suspension of Johnson's benefits from January 1, 1976 to December 1, 1977 violated the nonforfeitability provisions of ERISA.[3]

## II. *The Labor Management Relations Act and State Law Claims*

■ On his cross-appeal, Johnson contends that the district court erred in dismissing his pre-ERISA claim for pension benefits from 1969 to 1976, sought both on federal-law and state-law grounds.

For his federal-law basis, Johnson claims that he was entitled to pension benefits from June 26, 1969 until January 1, 1976 because the plan restrictions that suspended his benefits (due to his reemployment as a licensed seaman aboard NMU contract vessels) violated § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). Section 302(c)(5) requires that any money paid by management to a labor trust or pension fund must be "for the sole and exclusive benefit of the employees of such employer." This section has been held to prohibit the trustees of union pension funds from establishing "arbitrary exclusions from pension benefits." *Knauss v. Gorman,* 583 F.2d 82, 88 (3rd Cir.1978).

The defendant plan and its trustees contend preliminary that there is no subject-matter jurisdiction over the claim under the federal Labor Management Relations Act. In so arguing, the defendants rely upon expressions that whether a pre-ERISA eligibility requirement in a pension plan is arbitrary or capricious is primarily a question of state, not federal, substantive law, *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 974–75 (5th Cir.1981), and that "only structural deficiencies in a plan that defeat the 'sole and exclusive benefit' provision of section 302(c)(5), and not simple breaches of fiduciary duty, violate that provision." *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1258 n. 3 (5th Cir. 1980). These expressions concerning the

---

**3.** In an additional argument not addressed by the district court, Johnson contends that under the express terms of the plan he was entitled to draw pension benefits commencing January 1, 1976, since the plan as amended and adopted on November 23, 1977, provided that, when accepted by the Internal Revenue Service as a qualified ERISA plan, the amendments then adopted would be effective January 1, 1976. Among the amendments then conditionally adopted was the one that removed employment as a licensed seaman (such as Johnson's) as a cause for suspension of payment of NMU service pensions for twenty years of covered employment as an *un*licensed seaman. However, when this amended plan was adopted in 1977, the trustees reserved the right to change it to adjust to regulations and also stipulated that, if the plan were further amended before accept-

ance by the Internal Revenue Service, payments would be made in accordance with the plan as further amended. R.II, pp. 489–90. In a clarification of pension regulations of September 19, 1978 (before Johnson's application of November 7, 1978, for benefits under the amended plan), the Trustees determined that the effective date of this particular amendment was intended to be November 12, 1977 (R.II, 378, 561). This clarification is not shown to be beyond the trustees' amendment powers, *see supra,* also R.II, p. 546, nor beyond the full powers granted to them by the trust agreement to determine questions of coverage and eligibility and in that respect to construe the provisions of the agreement with binding effect, R.II, p. 389, nor to be a capricious and arbitrary abuse of such powers.

propriety of a § 302(c)(5) claim, however, do not raise an issue of subject matter jurisdiction, rather an issue of whether the statutory provision has created a private cause of action under non-structural-defect circumstances that would entitle a retiree to recover his pension benefits.

Section 302(e) of the Labor Management Relations Act, 29 U.S.C. § 186(e), clearly provides the district courts with the jurisdiction to "restrain violations of this section [§ 302]." "To protect the rights of pensioners, courts have found it necessary to subject the conduct of pension plan trustees to judicial review and correction." *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 100 (5th Cir.1979). However, "the actions of the trustees in the administration of the pension plan must be sustained unless plaintiff can prove such activities have been arbitrary or capricious." *Id.* The majority of the courts that have considered the issue have held, consistently with our expression in *Bowen, supra,* that a plaintiff states a claim under § 302(c)(5) if his allegations are to the effect that the plan has a "structural defect" that has worked to exclude a group of retirees from benefits arbitrarily and capriciously, *i.e.,* for no reasonable purpose.[4]

The plaintiff Johnson contends that the restrictions imposed by the plan arbitrarily limited the right of many members such as himself to receive their pensions simply because of their continued maritime employment. He particularly complains of as without legitimate foundation the provision that suspended the pensions only of retirees who worked on American flag vessels or on NMU contract vessels, not of those who worked on other vessels. He claims that this distinction arbitrarily precludes the receipt of pension benefits to retirees of entitlement equal to those retirees also working as seamen, based solely upon the identity of the employer of a seaman rather than upon the type of post-retirement maritime employment obtained by him.

Without detailing the plan's reasons for the maritime-employment-based suspension of payment of service pensions to otherwise qualified retirees, we think it is sufficient to note that the initial more stringent limitations upon any maritime employment arose in an effort to assure that those who collected benefits were really retired from the maritime industry and thus in need of the benefits, that the more liberalized later restrictions were designed to encourage more senior NMU members to retire and to create openings in union jobs for other younger NMU members who faced unemployment in changing economic conditions, and that some of the restrictions (later abandoned) for employment on American flag and NMU-contract vessels were designed to ensure that maritime employers contributing to the NMU plan did not simultaneously pay the same person both a union pension (through their contributions

---

**4.** *See Hurn v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California,* 703 F.2d 386, 389–90 (9th Cir.1983); *Adams v. N.J. Brewery Employees' Pension Trust Fund,* 670 F.2d 387, 397 (3rd Cir.1982); *Roark v. Lewis,* 401 F.2d 425, 426–27 (D.C.Cir.1968); *but cf. Lugo v. Employees Retirement Fund of the Illumination Products Industry,* 529 F.2d 251, 254–56 (2d Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976).

As stated by the Ninth Circuit in *Hurn,*
Our authority to review [the pension plan's] scheme of distribution, as interpreted by the trustees, is limited to what can be implied from section 302(c)(5)'s mandate that trust rules be in the "sole and exclusive benefit" of employees. To implement section 302(c)(5)'s mandate while respecting the trustees' need for discretion in conceiving a plan to maximize employee welfare, we have traditionally reviewed trust rules to ensure that they are not arbitrary and capricious, unsupported by substantial evidence, instituted in bad faith, or erroneous on a question of law. [Citations omitted]. Under the "structural defect" test, an employee can show violation of these standards by establishing the exclusion of a large number of employees from benefits for no apparent reason. *Burroughs v. Board of Trustees,* 542 F.2d 1128, 1131 (9th Cir.1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). The trustees will still prevail if they show a reasonable purpose for their rule. *See Miranda [v. Audia,* 681 F.2d 1124], 681 F.2d at 1125–27; *Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 543–45 (9th Cir. 1980).
*Hurn,* 703 F.2d at 389–90.

to the pension fund) and a salary while he was working.

The reasons advanced for the employment-related suspension of service pensions to retirees cannot be said to be without reasonable purpose, nor can they be said to deprive arbitrarily one group of pensioners from entitlement to immediate payment of benefits, as contrasted with the treatment accorded others allegedly similarly situated. Under the limited judicial review permitted by the arbitrary and capricious standard, therefore, we affirm the district court's rejection of the federal-law § 302(c)(5) claim asserted by Johnson.

With regard to Johnson's state-law claim, it likewise at the least requires for recovery that the pension plan's denial of benefits be shown to be arbitrary and capricious. For the same reasons as those that justified as nonarbitrary under the federal-law claim the plan's suspension of the payment of pensions during maritime employment, *supra,* we likewise affirm the district court's dismissal of the plaintiff Johnson's state-law claim.

III. *Conclusion*

For the reasons stated, we REVERSE the judgment of the district court that Johnson was entitled to pension benefits from January 1, 1976 to December 1, 1977 under the provisions of ERISA, and AFFIRM the district court's judgment that Johnson was not entitled to his pension benefits prior to January 1, 1976 under either the Labor Management Relations Act or state law. The plaintiff-appellee is to pay all costs.

AFFIRMED IN PART, REVERSED IN PART.