758 F.2d 973
 6 Employee Benefits Ca 1475
 Richard GEIB, Joseph P. Sudigala, Edward Bogensberger,
Anthony J. Hien, Frank Hoegler, Joseph Lumer, Anthony Diaz,
Alois G. Prechtl, Josef Petersell, Carl N. Anderson, Victor
Carcich, and Joseph Johnson, Appellants,
v.
NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT
FUND and Al Sgaglione, Administrative Executive of
New York State Teamsters Conference
Pension and Retirement Fund, Appellees.
 No. 84-1328.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 14, 1985.
Decided April 9, 1985.
 
 Susan Martin (argued), I. Philip Sipser, Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, Charles C. Hansford, Allentown, Pa., for appellants.
 Peter P. Paravati (argued), Paul Skavina, Constance J. Angelini, Utica, N.Y., for appellees.
 Before ADAMS and WEIS, Circuit Judges, and HARRIS, District Judge.*
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In response in part to financial constraints, the trustees of a multi-employer pension plan amended its reemployment provision and suspended payments to pensioners receiving benefits under a retirement program based on years of service. The plan did not specify a "normal retirement age," and plaintiffs here are pensioners who had not reached age 65. In these circumstances, we find no error in the district court's determinations that the trustees had neither violated ERISA nor acted arbitrarily and capriciously. We therefore will affirm the judgment for the trustees.
 
 
 2
 After the parties filed cross-motions, the district court granted summary judgment in favor of defendants and denied the plaintiffs' motion. This appeal followed.
 
 
 3
 The twelve plaintiffs were formerly employed by F & M Schaefer Brewing Company in Kings County, New York and were members of the Brewery Workers Pension Fund, a multi-employer plan created in 1949. When the Brewery Fund's financial position deteriorated, its trustees negotiated a merger with the New York State Teamsters Pension and Retirement Fund. In 1973, the trustees of both Funds executed an Agreement and Plan of Integration.
 
 
 4
 The Agreement provided that after completion of the merger, the Teamsters Fund trustees would assume responsibility for the administration of both funds. Members of the Brewery Fund were given the opportunity to participate in either the Brewery or the Teamsters pension plan. The plaintiffs chose "to remain under and be covered by the existing provisions of the brewery plan to be interpreted by the Teamsters trustees in accordance with the rules and regulations of that plan and as they may be modified from time to time hereinafter."
 
 
 5
 The Teamsters Fund soon realized that it had made a bad bargain and began protracted litigation in both state and federal courts to escape its commitments.[1] These efforts eventually proved unavailing. The Brewery Fund trustees submitted their resignations effective December 1, 1976 and, despite continued Teamsters' foot-dragging, a state court judgment declared the merger complete as of that date.
 
 
 6
 In the interim, the plaintiffs' employer ceased operations in New York state. Plaintiffs terminated their membership in the Brewery Workers Local at the New York plant, and later obtained full time employment at Schaefer's facility in Fogelsville, Pennsylvania.[2] They were hired as new employees and joined the United Cement, Lime & Gypsum Workers Local with no seniority credit for the time spent at the New York plant.
 
 
 7
 At the time Schaefer's New York operation was closed, none of the plaintiffs had reached age 65. All but one applied for a "Thirty Year Service Pension" under the Brewery Workers Plan. The other, with less service, applied for an "Early Retirement Pension." Benefits were approved and plaintiffs continued to receive their pensions while working for Schaefer at Fogelsville.
 
 
 8
 In 1980, financial strain on the merged funds led the Teamsters trustees to adopt a provision suspending benefits for pensioners who became reemployed. The new rule provided that when a Teamsters Conference retiree "goes to work in the same industry, trade or craft, and same geographic area [as is covered by the Teamsters Fund] or works for a contributing employer in any capacity, or for a former contributing employer in any capacity," benefits would not be paid for any month of reemployment. The Brewery Workers Plan had provided that payments would be suspended if a "pensioner enters the service of a participating company and becomes an employee entitled to membership in the plan."
 
 
 9
 In June 1982, plaintiffs were asked to sign a "Retirement Declaration" agreeing to abide by the terms of the new provision of the Teamsters Fund. When plaintiffs refused, their pensions were suspended.
 
 
 10
 The plaintiffs' suit alleged that defendants had violated the nonforfeitability and fiduciary duty provisions of ERISA and that adoption of the 1980 reemployment clause was arbitrary and capricious. The district court found that the "normal retirement age" under the Brewery Workers Plan was 65, and because plaintiffs had not reached that age, ERISA did not bar suspension of their benefits during reemployment.
 
 
 11
 Because the Brewery Fund had always included a reemployment provision, albeit not as stringent, and because actuarial concerns were "an important factor," the court found that adoption of the 1980 reemployment amendment was not arbitrary and capricious. Finally, the district court rejected the plaintiffs' contention that the geographic limitation applied only to the eight New York metropolitan counties described in the Brewery Workers Plan and held that the rule applied to the entire area covered by the Teamsters Fund.
 
 
 12
 On appeal, plaintiffs renew the points they urged on the district court and also contend that defendants are estopped to suspend pensions once they become payable.
 
 
 13
 The pertinent portion of ERISA is Sec. 203(a), which states that "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...." 29 U.S.C. Sec. 1053(a). That age is defined as the earlier of "the time a plan participant attains normal retirement age under the plan, or ... the time a plan participant attains age 65...." 29 U.S.C. Sec. 1002(24). The general rule of Sec. 203(a) is subject to several exceptions. One of these allows benefits to be suspended if the pensioner returns to work in the same industry, trade and geographic area. 29 U.S.C. Sec. 1053(a)(3)(B)(ii).[3]
 
 
 14
 A critical element of this case is the district court's determination of the normal retirement age under the Brewery Plan. The statute clearly permits the use of a normal retirement age less than 65, see, e.g., Janowski v. International Brotherhood of Teamsters, Local No. 710 Pension Fund, 673 F.2d 931 (7th Cir.1982), vacated on other grounds, 464 U.S. ---, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); Hernandez v. Southern Nevada Culinary & Bartenders Pension Trust, 662 F.2d 617 (9th Cir.1981), but the Brewery Plan does not expressly define the critical age. After discussing membership and credited time, the plan lists the heading "Section 4 benefits" and then describes in turn.
 
 
 15
 "(1) Normal Pension" ("a member who has reached his 65th birthday ... shall be retired ... on a normal pension ...")
 
 
 16
 "(2) Early Retirement Pension" (a member age 55 may defer his pension until age 65 or receive an actuarially reduced pension at present age).
 
 
 17
 "(3) Disability Award Pension"
 
 
 18
 "(4) Thirty Year Service Pension" (at expiration of 30 years service, a pension equal to that of the "normal pension" may be accepted).
 
 
 19
 The terms of alternatives (2) through (4) refer in a number of instances to the "normal pension" and to age 65 (e.g., the disability pension is "equal to the normal pension ... as if [the applicant] were then 65 years of age").
 
 
 20
 Plaintiffs argue that there may be more than one "normal retirement age." Under the Brewery Workers Plan, they maintain that normal retirement age is the earlier of 65 or the age at which a worker achieves 30 years of service.
 
 
 21
 Plaintiffs rely on an unpublished district court opinion, Nichols v. Board of Trustees of the Asbestos Workers Local 24 Pension Plan, 1 E.B.C. (BNA) 1868 (D.D.C.1979), and Rev.Rul. 78-120, 1978-1 C.B. 117. The latter states only that a plan specifying a normal retirement age less than 65 qualifies for treatment as a pension plan under the Internal Revenue Code. See 26 U.S.C. Sec. 401 (1982). The ruling does not purport to give any guidance in determining whether a given pension plan provides a normal retirement age under 65--the question at issue here. Thus, there is no demonstrated applicability of the revenue ruling to the facts of this case.[4] In addition, we point out once again that although revenue rulings may be helpful, they do not have the force of law. Becker v. Commissioner of Internal Revenue, 751 F.2d 146, 149 (3d Cir.1984).
 
 
 22
 As for the Nichols case, it is not binding on us nor is it persuasive. To some extent it is distinguishable. In Nichols, the plan stated that a person was entitled to receive a "normal pension" if he retires after (a) 25 years service or (b) he has attained the age of 65. Thus, the language of the plan itself defined 25 years of service as a "normal pension." In contrast, the only "normal pension" in the Brewery Plan commenced payment at 65. The Thirty Year Service Pension is an additional, separate pension alternative.
 
 
 23
 In Johnson v. Franco, 727 F.2d 442 (5th Cir.1984), the court permitted the suspension of pension benefits under a reemployment rule despite the pensioner's contention that such action violated Sec. 203. In that case, the plaintiff had retired under a "Service Pension" before reaching age 65, and the plan specifically defined normal retirement age as 65. Since Sec. 203 protects only the right to payments at normal retirement age, the court found that provision inapplicable to the suspension of the plaintiff's service pension benefits.
 
 
 24
 The Johnson court expressed some reservations about the analysis of normal retirement age adopted in Nichols. Although the plan considered in Johnson specified retirement age as 65, the court nevertheless indicated that without an express provision to the contrary, normal retirement age is taken to be 65. See Hernandez v. Southern Nevada Culinary & Bartenders Pension Trust, 662 F.2d 617 (9th Cir.1981).
 
 
 25
 We are reinforced in our conclusion that the normal retirement age under the Brewery Plan is 65 because that is the age that ERISA adopts absent an express provision in the plan. If the plan is silent, the preferable construction would be to use the statutory age.
 
 
 26
 The legislative history is consistent with this approach. In discussing the bill, the House Conference Committee Report states that a plan is generally required to commence benefit payments after "the participant attains age 65 (or any earlier normal retirement age specified under the plan)." H.Conf.Rep. No. 1280, 93d Cong., 2d Sess. ---, reprinted in 1974 U.S.CODE CONG. & AD.NEWS 4639, 5038, 5062. This report replaced a previous one that did not include the provision for an earlier retirement age established by the plan. See H.Rep. No. 807, 93d Cong., 2d Sess. ---, reprinted in 1974 U.S.CODE CONG. & AD.NEWS 4670, 4735. The change in the bill suggests that explicit language in the plan is necessary to lower the critical age. It is reasonable, therefore, to adhere to the statutory age of 65 unless the plan states otherwise.
 
 
 27
 In the absence of language to the contrary in the plan, we find no error in the district court's determination that the normal retirement was 65. Once this fact is established, it follows that the 1980 amendment did not violate ERISA's requirements. This is so because the nonforfeitability provisions of Sec. 203 do not apply until normal retirement age is reached. The plaintiffs' pensions were suspended before they reached 65, not afterward. See Fine v. Semet, 699 F.2d 1091, 1093 (11th Cir.1983); Hernandez v. Southern Nevada Culinary & Bartenders Pension Trust, 662 F.2d 617 (9th Cir.1981); Hurn v. Retirement Fund Trust of the Plumbing Heating & Piping Industry of Southern California, 648 F.2d 1252, 1253 (9th Cir.1981); see also Harm v. Bay Area Pipe Trades Pension Plan Trust Fund, 701 F.2d 1301, 1306 (9th Cir.1983).[5]
 
 
 28
 Plaintiffs do not concede that this finding ends the case but go on to argue that application of the 1980 amendment to those already receiving pensions was arbitrary and capricious. They rely on such cases as Brug v. Pension Plan of the Carpenters Pension Trust Fund for Northern California, 669 F.2d 570 (9th Cir.1982); Valle v. Joint Plumbing Industry Board, 623 F.2d 196 (2d Cir.1980); and Agro v. Joint Plumbing Industry Board, 623 F.2d 207 (2d Cir.1980).
 
 
 29
 The district court, however, found that the circumstances at hand differ from those in the cited cases because the 1980 amendment did not deprive plaintiffs of pension eligibility which they had previously earned. The benefits were merely suspended during reemployment--a policy that had existed under the Brewery Workers Plan as well.
 
 
 30
 In an affidavit, the administrator of the Teamsters Fund asserted that the 1980 amendment had the dual purposes of bringing the plan into conformity with the reemployment provisions of ERISA and promoting the financial stability of the Fund. He stated that the rule "is based upon a valid need to conserve Fund assets.... When the breweries ... moved out of the New York area and ceased contributing to the Fund, the Fund was caused to incur liabilities for which there was no additional funding."The district court cited a 1982 actuarial report confirming that the Brewery Fund was presently paying out over $7,000,000 a year more than was being contributed to it. Plaintiffs argue that the information in the 1982 report cannot be used to justify an action taken by the trustees in 1980. Although prepared in 1982, the actuarial report demonstrates a history of underfunding of the Brewery Fund extending back through previous years and thus supports the administrator's contention that the trustees' action was based in part on financial concerns. The plaintiff has not presented to us any evidentiary material contradicting the administrator's statement. On this record, the district court, therefore, did not err in concluding that the 1980 amendment represented reasonable action designed to conserve the assets of both funds.
 
 
 31
 In Adams v. New Jersey Brewery Employees' Pension Trust Fund, 670 F.2d 387 (3d Cir.1982), we recognized the sometimes conflicting obligations of the trustees to preserve the financial security of a pension fund and yet apply the assets to the greatest possible advantage for the beneficiaries. At times, restricting the amounts paid to some may be necessary to prevent loss to others. Partly because of these competing interests, trustees are given broad discretion to act, and we reverse their actions only if they are arbitrary and capricious. See Rosen v. Hotel & Restaurant Employees and Bartenders Union, 637 F.2d 592 (3d Cir.1981). See also Struble v. New Jersey Brewery Employees Welfare Trust Fund, 732 F.2d 325, 333 (3d Cir.1984).
 
 
 32
 The trustees' action here was not arbitrary and capricious. It applies not only to those electing Brewery Fund benefits but also to all those within the scope of the Teamsters Fund. Although plaintiffs do not fare as well as they would wish by inclusion in the merged group, it must be recognized that without the additional financial support provided by the Teamsters Fund, pensions in the future would be jeopardized. Suspension of retirees' payments during reemployment as a necessary measure to safeguard their pensions and others when they are no longer able to work does not strike us as inequitable, let alone arbitrary or capricious.[6]
 
 
 33
 Nor do we find that the 1980 amendment required the approval of the Brewery Fund participants. Although that requirement was set out in the original plan, after the merger, the amendment process became subject to the provisions of the Teamsters Plan. The substantive features of the Brewery Plan survived, but the administrative and procedural ones did not.
 
 
 34
 Finally, plaintiffs invoked collateral estoppel based on an order granting summary judgment on a counterclaim in the case of New York State Teamsters Conference Pension & Retirement Fund v. Hoh, 561 F.Supp. 679 (N.D.N.Y.1982) (Hoh II). In that case, the court held that application of the 1980 amendment to a pensioner was arbitrary and capricious. Although the same reemployment rule was at issue in Hoh II, the situation there was different in several major respects. The pensioner was not reemployed in the same industry. Moreover, he was over 65 and therefore had reached the normal retirement age. Given these differences, the identity of issues required for the application of collateral estoppel is not present. See RESTATEMENT OF JUDGMENTS (SECOND), Sec. 27 (1982); Haize v. Hanover Ins. Co., 536 F.2d 576 (3d Cir.1976). Consequently, we conclude that collateral estoppel is not applicable.[7]
 
 
 35
 Having carefully reviewed the plaintiffs' contentions, we conclude that the district court did not error, and accordingly its judgment will be affirmed.
 
 
 
 *
 The Honorable Oren Harris, United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation
 
 
 [1]
 For a history of these proceedings, see New York State Teamsters Conference Pension & Retirement Fund v. Hoh, 554 F.Supp. 519 (N.D.N.Y.1982) (Hoh I)
 
 
 [2]
 Most of the plaintiffs began work at Fogelsville in 1976; however, one plaintiff began his employment there in 1974 and another in 1978
 
 
 [3]
 29 U.S.C. Sec. 1053(a)(3)(B) states:
 "A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits--
 * * *
 (ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commence.
 The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph...."
 
 
 [4]
 The ruling concluded, "... a pension or annuity plan will not fail to qualify under section 401(a) of the Code merely because it provides for a normal retirement age of less than 65."
 
 
 [5]
 Our decision that section 203(a) does not protect pensioners from suspension of benefit payments being received before normal retirement age is entirely consistent with the holding in Hoover v. Cumberland Maryland Area Teamsters Pension Fund, 756 F.2d 977 No. 84-3116 (3d Cir., filed Mar. 19, 1985). In that case pensioners successfully argued that section 204 of ERISA prevented trustees from amending the formula by which an employee's accrued benefits are calculated. Hoover carefully distinguishes the situation in which payments are received before normal retirement age
 
 
 [6]
 We note that in Brug the trustees' action violated the express terms of the plan, a circumstance which does not exist here
 
 
 [7]
 The district court's action in Hoh II is not yet appealable, but the Teamsters Trustees have stated to this court that they will appeal when a final order is entered