**Daniel SPACEK Plaintiff,**

v.

**TRUSTEE OF the AGREEMENT OF TRUST FOR MARITIME ASSOC.—I.L.A. PENSION PLAN et al. Defendants.**

**Civil Action No. 95–370.**

United States District Court,
S.D. Texas,
Houston Division.

April 15, 1996.

Blair Bernard Brininger, Houston, TX, for plaintiff.

James Patrick Cooney, Royston Rayzor Vickery & Williams, Houston, TX, for defendants.

## ORDER

HITTNER, District Judge.

Pending before the Court is the motion for summary judgment filed by defendants and the motion for partial summary judgment filed by plaintiff. Having considered the motions, the submissions on file, and the applicable law, the Court determines that the defendants' motion for summary judgment should be granted in part and denied in part and the plaintiff's motion for summary judgment should be granted in part and denied in part.

Plaintiff Daniel Spacek is a retired longshoreman formerly employed by an entity covered by The Maritime Association—I.L.A. Pension Plan (the "Plan"). Spacek retired from employment on November 1, 1985. Under the Plan, Spacek received early retirement benefits subject to certain restrictions. One of the restrictions was that the pension benefits may be suspended if the pensioner becomes reemployed in the same industry from which he retired.

On April 28, 1994, Spacek began working for James J. Flanagan Stevedores as a superintendent. The Trustees of the Plan notified Spacek that such action may subject his benefits to suspension and in July, 1994, the Trustees did in fact suspend his benefits for a six month period. Spacek sued the Plan and the Trustees, alleging several violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.

The decision to suspend Spacek's benefits was based on the determination by Trustees that Spacek was re-employed as defined by the Plan and therefore precluded from receiving retirement benefits. Under the Plan, pension recipients are not entitled to benefits for any period of "re-employment." Plan § 9.1(d). At the time of Spacek's retirement, an individual is considered re-employed if:

(i) he is employed in the same industry, in the same trade or craft, in the same geographic area covered by this Plan, as when

he first became eligible for such pension; and

(ii) he is credited with at least one (1) Credit Hour for the Payroll Period ending in such month.

Plan § 9.1(b)(2). However, in May, 1991, the Plan was amended (the "1991 Amendment") to delete the second requirement that a pensioner be credited with at least one Credit Hour per payroll period before benefits could be suspended. Spacek argues that the Plan was improperly amended and that the deletion of subsection (ii) cannot be applied to his situation.

Under ERISA, every employee benefit plan covered by the statute is required to "provide a procedure for amending such plan, and [a procedure] for identifying the persons who have authority to amend the plan...." 29 U.S.C. § 1102(b)(3). Compliance with this provision requires only the barest of procedures. *Curtiss-Wright Corp. v. Schoonejongen,* —— U.S. ——, ——, 115 S.Ct. 1223, 1229, 131 L.Ed.2d 94 (1995) ("the literal terms of § [1102](b)(3) are ultimately indifferent to the level of detail in an amendment procedure, or in an identification procedure ...").

The Plan at issue here contains the following amendment procedure:

The Trustees may amend the Plan, from time to time, in any manner not in conflict with the terms of the Trust; provided, however, that no such amendment will cause or permit any part of the Trust properties to be diverted to purposes other than for the exclusive benefit of the Participants or their spouses or permit any part of the Trust properties to revert to or become the property of the Employers.

Plan § 15.1. Under this clause, the first requirement of section 1102(b)(3) is clearly met: the Plan identifies the Trustees as the entity with authority to amend the Plan. *Id.* at ——, 115 S.Ct. at 1228 (identifying the Company as the person with authority to amend the welfare plan satisfies the requirement that a plan have a procedure for identifying the persons with amendment authority).

The second requirement of § 1102(b)(3) is also met. An amendment procedure need not be detailed, and the procedure specified here is more elaborate than the one sanctioned by the Supreme Court in *Schoonejongen.* An adequate procedure need only allow for determination of what it means for the authorized person to make a decision to amend the plan. *Id.* at ——, 115 S.Ct. at 1229. In *Schoonejongen,* the sole procedure specified was that "The Company reserves the right at any time to amend the plan." *Id.* at ——, 115 S.Ct. at 1226. This procedure was sufficient because the power of the Company to amend the plan was dictated by the same principles of corporate law that govern any decision made by a corporation. Similarly, the method by which a Board of Trustees makes its decisions is governed by the Agreement of Trust for Maritime Association—I.L.A. Pension Fund. Thus, the lack of specifics within the plan is not important so long as there is a method by which amendments are made and that method is ascertainable. In this case, that requirement is met.

Spacek also argues that the Trustees failed to follow their own procedures in amending the Plan, thus rendering the change void. Several amendments were made to the Plan in the early 1980's. These amendments contain language more formal than that used in the 1991 Amendment. However, this difference does nothing to create a genuine issue of material fact as to the validity of the more recent change. Any distinctions that may exist are purely superficial and do not render the 1991 Amendment void or in violation of existing procedures.

In a similar vein, Spacek contends that the 1991 Amendment was nothing more than an informal amendment. Spacek is correct in noting that amendments to an ERISA plan must be made in compliance with the Plan's procedures, and that informal or oral amendments are generally ineffective. However, the evidence before the Court demonstrates that the May, 1991 change to the plan was made formally, at a Trustees meeting, and pursuant to established procedure. In addition, the plan participants were notified in writing of the change to the Plan. Accord-

ingly, the 1991 Amendment cannot be considered informal.

Spacek's final argument relative to the validity of the 1991 Amendment is that it did not comply with the terms of the Plan because it lacked the Trustees' signatures. As an initial matter, the Court notes that the previous Plan amendments cited by Spacek as representative of "formal" amendments do not contain the Trustees' signatures. More importantly, the evidence before the Court indicates that the challenged amendment was formally presented to the Trustees at a meeting held on April 17, 1991. The proposed amendment was voted upon and adopted by the Trustees. The Court therefore finds that the 1991 Amendment was made in compliance with ERISA and with the Plan.

Spacek next argues that he received inadequate notice of the 1991 Amendment. However, Spacek has offered no evidence to support this contention other than his bare statement that he was unaware of the change. In contrast, defendants have adequately demonstrated to the Court that notice of the 1991 Amendment was mailed to all participants and that the notice sufficiently conveyed to the participants the nature of the change.

On March 12, 1991, the administrator of the Plan mailed to participants a document entitled "Notice To Plan Participants Eligible for Age or Vested Pensions." This notice stated that the Plan provisions "allow for suspension of your pension benefits and temporary bridge benefits in the event you return to employment in the industry." Then on May 8, 1991, the Plan mailed a notice to participants which spelled out precisely the amendment. Spacek does not attest that he never received these documents and the Plan has no indication that they were returned to sender. Accordingly, the Court finds that notice of the 1991 Amendment was adequate.

Spacek also maintains that since his retirement in 1985, he has not been employed in the industry within the meaning of the Plan. His only support for this contention is his affidavit in which he states that since he retired, he has not been employed by an employer who is a signatory to the Plan. Despite this statement, it is undisputed that he was employed by Flanagan after 1985. Further, Flanagan is listed as a participating employer in Appendix A of the Plan. Based on this evidence, the Court finds that no material fact question exists as to whether Spacek was employed within the industry while also receiving benefits under the Plan.

■ Spacek's next argument is that the 1991 Amendment violates provisions of ERISA that proscribe certain types of plan amendments. Under 29 U.S.C. § 1054(g)(1), "The accrued benefit of a participant under a Plan may not be decreased by an amendment of the Plan, other than an amendment described in section 1082(c)(8) or 1441 of this title." Further, § 1054(g)(2) provides that an amendment having the effect of "eliminating or reducing an early retirement benefit or a retirement-type subsidy ... with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." Ordinarily, early retirement benefits are not considered accrued benefits under ERISA. *See e.g., Johnson v. Franco*, 727 F.2d 442, 445 (5th Cir. 1984) (holding that a participant's rights to a pension do not become nonforfeitable under ERISA until reaching normal retirement age). However, under section 1054(g)(2), when those benefits are *eliminated or reduced*, they are treated as accrued benefits. In this case, Spacek's benefits are merely suspended and thus § 1054(g)(2) does not apply. *Whisman v. Robbins*, 55 F.3d 1140, 1147 (6th Cir.1995).

■ Spacek's final argument is that the decision to retroactively apply the 1991 Amendment and suspend his Plan benefits was arbitrary and capricious. When, as here, the plan administrator has discretionary authority to determine coverage under the plan, the administrator's decision will not be disturbed absent an abuse of discretion. *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992). This analysis has two steps. First the Court determines whether the administrator applied the legally correct interpretation of the plan. If so, then the decision is upheld. If not, the Court goes on to consider: "(1) the internal consistency of the plan under the administrator's inter-

pretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 638 (5th Cir.1992). It is in light of these factors that the Court must ultimately decide whether the challenged decision was arbitrary and capricious.

However, the standard set out in *Wildbur* does not fully contemplate a situation where the plan administrator is interpreting a retroactive plan amendment. In this situation, the issue is not whether the amendment is applied according to its terms, but rather, whether the amendment can be applied at all due to its retroactive nature. While the Fifth Circuit has not explicitly addressed when a plan may apply retroactive amendments to its participants, several other courts have confronted the issue.

Courts that have analyzed the propriety of retroactive amendments typically begin their analysis by noting the contractual nature of a pension plan. *E.g., Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan and Trust,* 920 F.2d 651, 661 (10th Cir.1990) (citation omitted) ("A pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years."); *accord Kemmerer v. ICI Americas Inc.,* 70 F.3d 281, 287 (3d Cir. 1995). Given the contractual relationship between the plan and the employee, once an employee acts in reliance on that contract by retiring, the plan is required to determine the employee's benefits in accordance with the terms of the plan in effect at the time of the employee's action. *See Pratt,* 920 F.2d at 661 ("Subsequent unilateral adoption of an amendment which is then used to defeat or diminish the plaintiff's fully vested right under the governing plan document is ... arbitrary and capricious.").

 Other circuits have taken the same approach as the Tenth Circuit. For example, the Second Circuit held that a retroactive amendment of an pension fund that acted to deprive an intended beneficiary of plan benefits was arbitrary and capricious. *Agro v. Joint Plumbing Indus. Bd.,* 623 F.2d 207,

211 (2d Cir.1980). *See also, Brug v. Pension Plan,* 669 F.2d 570, 575–76 (9th Cir.), *cert. denied,* 459 U.S. 861, 103 S.Ct. 135, 74 L.Ed.2d 116 (1982) (holding that retroactive application of an amendment altering plan eligibility requirements was arbitrary and capricious). The rule that derives from these cases is that a plan cannot deprive an intended beneficiary under the plan of benefits to which that participant has vested rights. The rationale for this standard is that retirement decisions are based on the plan as in effect at the time of retirement. Any changes made after retirement that operate to suspend, reduce, or otherwise alter benefits leave the retiree without recourse as the decision to retire cannot generally be rescinded.

 Spacek is an intended beneficiary under the Plan who had vested rights in his age pension. Vested rights refers not to "accrued benefits" as defined by ERISA but rather to rights that have matured based on the terms of the plan. Under the Plan, Spacek's thirty years of credited service entitled him to an age pension. As he had not reached normal retirement age, certain restrictions were placed on the receipt of his pension. These restrictions do not render his pension rights nonvested but merely limit the scope of his vested rights. The Plan's decision to apply an amendment retroactively acts to deprive him of those vested rights and is therefore arbitrary and capricious. Based on the foregoing, the Court

ORDERS that the motion for summary judgment filed by defendants is DENIED to the extent that the Court finds that the Plan Trustees' retroactive application of the 1991 Amendment was arbitrary and capricious and GRANTED in all other respects. It is further ORDERED that the motion for partial summary judgment filed by plaintiff is GRANTED to the extent that the Court finds that the Plan Trustees' retroactive application of the 1991 Amendment was arbitrary and capricious.